Herman HARRISON, Jr.,
Plaintiff-in-Error,

v.

STATE of Tennessee, Defendant-in-Error.

Court of Criminal Appeals of Tennessee.

May 23, 1975.

Certiorari Denied by Supreme Court
Sept. 2, 1975.

Allen J. Strawbridge, Jr., Martin, William R. Neese, Paris, for plaintiff in error.

R. A. Ashley, Jr., Atty. Gen., William J. Haynes, Jr., Asst. Atty. Gen., Nashville, Fleming Hodges, Dist. Atty. Gen., Dyersburg, Othal Smith, Jr., Asst. Dist. Atty. Gen., Union City, for defendant in error.

## OPINION

WALKER, Presiding Judge.

In five cases tried together, the defendant below, Herman Harrison, Jr., was found guilty of (1) first degree murder of Doris Ann Harrison and sentenced to 50 years in the penitentiary; (2) assault with intent to commit first degree murder on Mrs. Finis Dorster and sentenced to six to 15 years; (3) assault with intent to commit second degree murder on Finis Dorster and sentenced to not less nor more than two years; (4) assault with intent to commit second degree murder on Kenneth Scronce and sentenced to not less nor more than two years; and (5) assault with intent to commit second degree murder on Jerry Riggs and sentenced to not less nor more than two years. The trial judge ordered the sentences served consecutively. The defendant appeals in error.

The deceased was the defendant's former wife and lived in a trailer home at the residence of her parents, Mr. and Mrs. Finis Dorster, near Dresden. Between 10:00 and 10:30 p. m., July 14, 1973, the defendant, armed with a club and a .22 caliber pistol, came to her trailer home where she had a visitor, Robert Burnett. She sent one of their three children to the house to get help from her father.

The deceased locked the trailer door, but the defendant broke the glass, opened the door, entered and knocked the deceased down. When Burnett rose from a couch, the defendant ordered him to sit down, took a pocketknife from him and, holding the pistol on Burnett, told him, "You are lucky that you are not getting it."

Mrs. Dorster started from the house to the trailer and the defendant shot her in the stomach when she was about 10 to 15 feet from the trailer. Mr. Dorster then got his shotgun and the defendant shot him in the leg and again shot Mrs. Dorster. He told the deceased, "There lays your damned old mother out there;" and "I'm going to shoot you, too." He then fatally shot her between the eyes.

Mr. Dorster went in the house because of his bleeding leg and gave his gun to Scronce, telling Scronce not to let the defendant into the house. Another daughter called the sheriff, Jerry Riggs.

When the sheriff arrived and tried to get the defendant to come out of the trailer, the defendant told him, "I'm a mean son-of-a-bitch and I'm walking tall tonight. You come get me;" and "I've done killed son-of-a-bitches and I'm going to kill two more before I leave." The sheriff radioed for help and continued to try to get the defendant to leave the trailer. The defendant told Scronce, "You sorry son-of-a-bitch, you lay that gun down or I'll kill you, too." When Scronce did not throw his gun down, the defendant shot at him. The defendant also fired at the sheriff. By this time the defendant had left the trailer and Scronce returned his fire, the first shot knocking the defendant to the ground. The defendant, only superficially wounded, got up, ran toward the house and Scronce shot again. The defendant threw his pistol away when it snapped several times, but he threatened to kill the sheriff with his club. The sheriff finally subdued him. In the meantime, other officers arrived. The defendant told one that he was going to kill the sheriff and Scronce, that he had been planning this for three months and had been target practic-ing and wanted to shoot all of them there between the eyes.

The following morning when the sheriff told the defendant that his former wife had died, he replied, "Well, I'm glad that the bitch did. Did the other one die?" When told that the mother had not died, he answered, "Well, I'm sorry about the trouble I had with you and Mr. Dorster. He's a pretty good fellow, but I hope the other two son-of-a-bitches die." He also told a jail inmate that he had been doing something he wanted to do for some time, that he had been "walking tall" and was going to kill the sheriff if he got half a chance.

Testifying in his own defense, the defendant admitted shooting his ex-wife and the Dorsters but denied shooting at the sheriff or Scronce. He said he had been drinking all day and was drunk by 11:00 a. m.; that he drank about a case of beer; that his purpose in going to the trailer was to see his children although he knew there would be trouble if he went there. He denied breaking the glass to gain entry and said he did this later. He said he had a club but did not draw his pistol at that time; that he slapped his ex-wife but she did not fall; that before he slapped her she had admitted burning a house and said he was going to go to the penitentiary if it was the last thing he did; that she was trying to get him back in the penitentiary.

The defendant said that Mrs. Dorster had a .32 automatic in her hand when she came toward the trailer. He said he threw his pistol at the sheriff and Scronce, and that he surrendered when he came to his senses. He testified he did not recall statements to the officers afterwards or those at the jail. He claimed he was drunk and that he did not plan these events.

Don Jenkins testified the deceased called him and asked his aid in putting the defendant in jail for stealing hogs; that she offered her favors for his assistance; that he told this to the defendant about 11:00 or 11:30 a. m. that day but the defendant did not react violently.

The defendant also offered evidence by the Chancery Court Clerk to show the date of the divorce and the date the petition alleged the separation took place.

In rebuttal the state presented evidence to show that Mrs. Dorster did not have a pistol.

By the defendant's principal challenge to his convictions, he urges that there was no statute at the time of the offenses or at the time of his trial proscribing first degree murder or fixing punishment for it, and the trial court erred in allowing him to be tried for first degree murder and in instructing the jury that its punishment was life imprisonment or for some period of time over 20 years. Since there was no valid murder statute, he says the convictions for assault to commit first and second degree murder are likewise void.

The indictment is in common law form and the court instructed the jury under T.C.A. 39–2401 et sequitur, as those sections read before the attempted substitution of a new murder statute by Chapter 192 of the Public Acts of 1973.

The defendant argues that the effect of *State v. Hailey*, Tenn., 505 S.W.2d 712 (1974), was to abolish the crime of first degree murder and the punishment for this crime. The state relies on *Bramlett v. State*, Tenn.Cr.App., 515 S.W.2d 895 (1974), to refute this contention.

These offenses occurred July 14, 1973, after the enactment of Chapter 192 of the Public Acts of 1973 effective May 8, 1973. The trial was held March 28, 1974, after our Supreme Court had held in *Hailey v. State, supra*, that Chapter 192 of the Public Acts of 1973 was void in its entirety.

Since Chapter 192 of the Public Acts of 1973 was unconstitutional, we held in *Bramlett v. State, supra*, that its attempted repeal of the prior T.C.A. 39–2402 was ineffective, leaving that statute in full force and effect. We did not reach the question of punishment for first degree murder because that case involved a conviction for second degree murder.

The effect of *Hailey v. State, supra*, declaring Chapter 192 of the Public Acts of 1973 void, was to leave in full force and effect the statutes relating to first degree murder and its punishment as they were at the time of the passage of the Act. *Hailey* had already been decided when these cases were tried and the trial judge was required to instruct the jury on the old statutes on first degree murder and its punishment. Those statutes were valid and were the law of the cases. The assignments challenging their application are overruled.

The defendant says the court erred in admitting over his objection the allegations of his ex-wife's divorce bill.

For the purpose of impeaching the state's first witness, Robert Bramlett, the defendant called as a witness the Chancery Court Clerk and had her bring the file in the divorce proceeding between the deceased and the defendant including the complaint. His counsel asked her the filing date, the date of the judgment, then asked her to examine the pleading and say when the deceased alleged she separated from the defendant and if it were a sworn complaint. The clerk answered these questions.

In response to a question from the district attorney general, defense counsel said they did not make the actual divorce petition an exhibit. The trial judge said it needed to be and it was then made an exhibit. Over the defendant's objection, the district attorney general was permitted on cross-examination to have the clerk read some of the allegations of the bill. The court held this permissible since defense counsel had asked about the separation date from the allegations of the bill and had gone further than inquiry as to the filing date.

The allegations of the divorce bill were hearsay but the defendant opened the door to this evidence by inquiring about the sworn allegations as to the separation date.

He cannot complain that the state was permitted to ask about other allegations of the bill. In any event we do not think this affected the result of the case. T.C.A. Sec. 27–117. The assignment is overruled.

■ The defendant says the evidence is insufficient as a matter of law to sustain the convictions. He contends in particular that he was so drunk and agitated that he could not have the requisite intent to commit murder in the first degree.

The defendant testified he was drunk and Sheriff Riggs said he smelled alcohol on his breath. The evidence does not support his claim of such drunkenness, however, as to make him incapable of premeditation. His testimony does not support this claim or that he was so agitated as to be incapable of premeditation. There is no evidence of insanity. He remembered the details of his activities that day, when he broke the trailer door, his words to the deceased, that he first shot at the feet of Mrs. Dorster and then shot her. He said a second before he shot the deceased he meant to shoot her. He surrendered when he was out of ammunition and the sheriff fired and was closing on him. These acts are consistent with one in control of his faculties. He told officers that he had been target practicing for this occasion and had been planning it three months. The evidence amply sustains the five convictions.

All assignments are overruled and the judgments are affirmed.

DWYER and O'BRIEN, JJ., concur.