IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE

## STATE OF TENNESSEE v. SAMUEL D. LAND.

**Direct Appeal from the Circuit Court for Williamson County
No. II-1098-332  Timothy L. Easter, Circuit Judge**

---

**No. M1999-01023-CCA-R3-CD - Decided April 28, 2000**

---

The appellant, Samuel D. Land, was found guilty by a jury of one count of felony evading arrest and one count driving on a revoked license, second offense. He was sentenced, as a career offender, to twelve years in the Department of Correction for the felony offense. A concurrent sentence of eleven months, twenty nine days was imposed for the misdemeanor offense. In this appeal as of right, the appellant challenges the trial court's denial of his motion to suppress a statement made after his constitutional right to counsel had attached and the trial court's denial of his motion for mistrial resulting from allegedly prejudicial comments made by the court. Additionally, he raises numerous evidentiary issues and challenges the sufficiency of the convicting offense. After review, we find one issue regarding hearsay evidence meritorious. We conclude, however, that this error is harmless. Furthermore, we find that no other error of law requiring reversal exists. We affirm the judgments of conviction entered by the trial court.

**Tenn. R. App. P. 3(b) Appeal as of Right; Judgments of the Williamson County Circuit Court are Affirmed**

HAYES, J., delivered the opinion of the court, in which SMITH, J. and OGLE, J., joined.

Eric L. Davis, Franklin, Tennessee, for the appellant, Samuel D. Land

Paul G. Summers, Attorney General and Reporter, Michael Moore, Solicitor General, Todd Kelley, Assistant Attorney General, Ronald L. Davis, District Attorney General, and Jeff P. Burks, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

The appellant, Samuel D. Land, was charged by presentment with theft over $10,000, driving under the influence, second offense, driving on a revoked license, second offense, and felony evading arrest. Prior to trial, the State entered a *nolle prosequi* as to the offenses of theft over $10,000 and driving under the influence. A jury found the appellant guilty of the offenses of evading arrest, a class D felony, and driving on a revoked license, a class A misdemeanor. Following trial, the

appellant pled guilty to the offense of driving on revoked second offense.  The appellant was sentenced as a career offender to twelve years in the Department of Correction for the felony offense and eleven months, twenty-nine days in the Williamson County Jail for the misdemeanor.  In this appeal as of right, the appellant contends:

I.  The trial court erred in denying the appellant's motion to suppress his statement to Detective Brown;

II.  The trial court erred in denying a mistrial when the court informed the jury that the trial would be delayed as the result of "late-filed notices" by the defense;

III.  The trial court improperly admitted hearsay statements under the excited utterance exception;

IV.  The trial court improperly permitted a witness to testify as to statements made by appellant's mother during a telephone conversation;

V.  The evidence introduced at trial failed to establish the appellant's guilt for both offenses beyond a reasonable doubt.

After review, we affirm.

## Background

On August 22, 1998, Trooper Richard Cash and Trooper Israel Silva of the Tennessee Highway Patrol were "running a stationary radar [at mile-marker 74] on I-65" in Williamson County. During the operation, the troopers observed a vehicle approaching from the rear at a very high rate of speed.  Trooper Cash made a visual estimate that the vehicle was traveling at over one hundred miles per hour.  As the vehicle passed their patrol car, he was able to identify a white male as the sole occupant and driver of the dark-color Ford vehicle.  Trooper Cash advised Trooper Silva to activate the radar, however, because of heavy traffic, the equipment failed to "clock" the vehicle. The troopers then initiated pursuit in an attempt to "pace" the vehicle.  The troopers reached a speed of one hundred and fifteen miles per hour during their pursuit.  The pursued vehicle exited I-65 at the Cool Springs exit, made a "sharp lane change," and passed a vehicle on the right.  At this point, the troopers were close enough to the pursued vehicle to activate the patrol car's emergency lights. The pursued vehicle made a right turn on to Mack Hatcher Boulevard, proceeding to the intersection of Franklin Road where the vehicle went through a red traffic signal.   The vehicle passed several other vehicles. The patrol car slowed down because of other traffic and lost the fleeing vehicle.  As the troopers proceeded in the direction of the pursued vehicle, they observed skid marks on the road and the pursued vehicle in a ditch on the side of the road.  Upon approaching the vehicle, the troopers discovered that the vehicle was unoccupied, the doors were ajar and the engine was

-2-

smoking.

During a check of the license tag on the 1996 Ford Taurus, the troopers discovered that the vehicle was registered to William Land and obtained Mr. Land's address. Trooper Cash proceeded to the residence of William Land, approximately one-half mile from the location of the disabled vehicle. Trooper Cash, accompanied by officers of the Franklin Police Department, arrived at the Land residence at approximately 2:20 a.m. Mrs. Land answered the door. Trooper Cash informed Mrs. Land that "her vehicle had been wrecked a short distance from her home. Mrs. Land, the appellant's mother, became angry and "started cursing." She exclaimed, "He, [the appellant], stole my car, he stole my car!" Trooper Cash accompanied Mrs. Land to the appellant's bedroom; the appellant was not there. Mrs. Land told Trooper Cash, "He's drunk, he stole my car." She also informed Trooper Cash that her car keys were in her purse and that the appellant took the keys out of her purse and stole her vehicle. She advised that she wanted to file criminal charges. Trooper Cash, having been provided the appellant's name and birth date from his mother, checked the appellant's driving status and learned that the appellant's license had been revoked due to May 19, 1998, convictions for driving under the influence and driving on a revoked license.

On September 8, 1998, Franklin Police Detective Richard Brown contacted Mrs. Land regarding this incident. Pursuant to this telephone conversation during which Mrs. Land again stated that the appellant took her vehicle without her permission, Detective Brown obtained a warrant against the appellant for theft of the vehicle. The appellant was ultimately located, resulting in his arrest on September 13, 1998. On September 21, 1998, Detective Brown encountered the appellant in the hallway of the General Sessions Court as the appellant was being escorted to meet with his appointed counsel. The appellant informed Detective Brown that " [t]he charge of theft is not correct, it should have been unauthorized use of a vehicle since it was [my] parents' vehicle."

Based upon this proof, the jury returned guilty verdicts as to the offenses of Driving on a Revoked License and Felony Evading Arrest. The appellant waived his right to have the jury determine the charge of driving on revoked, second offense, and entered a guilty plea.

### I. Motion to Suppress

On February 16, 1999, the trial court conducted a suppression hearing regarding the statements made to Detective Richard Brown on September 21, 1998. Detective Brown testified that he saw the appellant with his attorney standing in the back hallway of the General Sessions Court near the inmate holding cell. The appellant, who was in custody at the time, informed Detective Brown, "The charge of theft is not correct, it should have been unauthorized use of a vehicle since it was my parents' vehicle." Detective Brown denied initiating the conversation with the appellant, although he conceded that he "may have said 'hello'."

The appellant refuted Detective Brown's testimony by stating that, while he was waiting to speak with his attorney, Detective Brown approached him, offered his hand, and said "How are you doing, David?" The appellant related that the following colloquy occurred:

> **Appellant:** Fine, except for these charges.
> **Brown:** Now, I've got you on a theft charge, that'll do good.
> **Appellant:** No you don't, I wasn't in the car.
> **Brown:** That's not what I hear.
> **Appellant:** [The] police charged me with unauthorized use of a vehicle . . . how are you getting a theft when I wasn't in the vehicle.

The appellant asserted that he then terminated the conversation and "walked off."

Based upon the proof at the hearing, the trial court denied the motion finding the appellant's proof not credible and that the appellant's statement was not a response to police initiated interrogation. The appellant now contends that the trial court erred in denying his motion to suppress. Specifically, the appellant "submits that Detective Brown's actions and conduct were specifically designed as an attempt to elicit incriminating statements from the defendant," and was unconstitutional custodial interrogation. Additionally, notwithstanding his motion to suppress, the appellant contends that the statement "should not have been admitted [during the trial] as an admission of a party opponent" as the appellant was "not making any assertion as to his guilt or innocence." Rather, the appellant argues that he was "merely making a legal conclusion as to the appropriate charge as the allegation involved the use of his parents' vehicle.

### A. Suppression

The appellant, in contesting the admission of his statement to Detective Brown, is essentially claiming a violation of his Sixth Amendment[1] right to counsel during custodial interrogation.[2] It is a firmly established tenet of constitutional law that, after the initiation of formal charges against an accused, the Sixth Amendment right to counsel attaches, guaranteeing the accused the right to rely on counsel as a medium between him and the State at any critical confrontation with State officials,

---

[1]Although any review of whether an accused's Sixth Amendment right to counsel may necessarily involve consideration of his Fifth Amendment right to counsel via Miranda, the two are distinguished in purpose. The right to counsel provided by Miranda under the Fifth Amendment protects against coercions relative to self-incrimination, while the right to counsel under the Sixth Amendment guarantees, after formal charges have been brought, the right to legal assistance at any critical confrontation with State officials, irrespective of coercion. Notwithstanding the nature of the respective rights, we note that the United States Supreme Court in Michigan v. Jackson, 475 U.S. 625, 106 S.Ct. 1404 (1986), merely integrated the Fifth Amendment analysis of Edwards v. Arizona, into Sixth Amendment analysis. Michigan v. Harvey, 494 U.S. at 345, 110 S.Ct. at 1177.

[2]Since adversarial proceedings had been initiated by way of the arrest warrant, the appellant's Sixth Amendment right to counsel had attached. See Michigan v. Jackson, 475 U.S. at 639, 106 S.Ct. at 1407; Brewer v. Williams, 430 U.S. 387, 97 S.Ct. 1232 (1977); see also State v. Mitchell, 593 S.W.2d 280, 283 (Tenn.), cert. denied, 449 U.S. 845, 101 S.Ct. 128 (1980); State v. Butler, 795 S.W.2d 680, 685 (Tenn. Crim. App. 1990).

irrespective of coercion. See Maine v. Moulton, 474 U.S. 159, 176, 106 S.Ct. 477, 487 (1985). Once formal criminal proceedings begin, the Sixth Amendment renders inadmissible in the prosecution's case-in-chief statements "deliberately elicited" from a defendant without an express waiver of the right to counsel. Michigan v. Harvey, 494 U.S. 344, 348, 110 S.Ct. 1176, 1179 (1990). The accused may not be subjected to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication with the police. See Michigan v. Jackson, 475 U.S. at 636, 106 S.Ct. at 1411. Accordingly, "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." Miranda v. Arizona, 384 U.S. 436, 444, 86 S.Ct. 1602, 1612 (1966).

It is clear from the record that the appellant's statement was made while he was in custody and after his Sixth Amendment rights had attached. Thus, the only question is whether the statement was made in response to improper police interrogation by Detective Richard Brown. This determination involves questions of both fact and law, which this court reviews *de novo*. See generally State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999) (citing Harries v. State, 958 S.W.2d 799, 802 (Tenn. Crim. App.), perm. to appeal denied, (Tenn. 1997) (cases that involve mixed questions of law and fact are subject to *de novo* review)); State v. Bridges, 963 S.W.2d 487, 490 (Tenn. 1997).

The trial court's factual finding that Detective Brown did not solicit the voluntary statement made by the appellant will not be disturbed unless this finding is plainly wrong or without support in the evidence. See generally State v. Henning, 975 S.W.2d 290, 299 (Tenn. 1998) (appellate court should uphold trial court's decision on suppression motion unless record preponderates against finding). The relevant evidence presented at the suppression hearing consisted of the testimony of Detective Brown and the testimony of the appellant. Detective Brown related that the appellant voluntarily and spontaneously made the statement to him. The appellant's testimony, that Detective Brown initiated the conversation, contradicts Detective Brown's version. The evidence introduced by the State is consistent with the finding of the trial court. The appellant's testimony to the contrary does not dispel the finding. See Henning, 975 S.W.2d at 279 (credibility questions and resolution of conflicts in the evidence are matters entrusted to trial court as trier of fact). We find that such support exists in the record.

Next, the trial court's ruling that Detective Brown's conduct did not constitute interrogation is a conclusion of law that we review *de novo*. Custodial interrogation is limited to "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." Miranda v. Arizona, 384 U.S. at 444, 86 S.Ct. 1602.

> [T]he term "interrogation" refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect.

Rhode Island v. Innis, 446 U.S. 291, 301, 100 S.Ct. 1682, 1689-1690 (1980) (footnotes omitted). There is a difference between police initiated custodial interrogation and communications, exchanges,

or conversations initiated by the accused himself. See Edwards v. Arizona, 451 U.S. 477, 101 S.Ct. 1880 (1981). It is well established that questioning initiated by the accused is not interrogation in the Innis sense. Edwards v. Arizona, 451 U.S. at 484, 101 S.Ct. 1880. At the very least, the police must have asked a question that was "probing, accusatory, or likely to elicit an incriminating response" before a court may conclude that there was interrogation.

In the case *sub judice*, the statement was an unsolicited comment by the appellant. There is no constitutional protection from statements volunteered by the accused. Edwards v. Arizona, 451 U.S. at 484, 101 S.Ct. at 1880. Since the police surely cannot be held accountable for the unforeseeable results of their words or actions, the definition of interrogation can extend only to words or actions on the part of police officers that they should have known were reasonably likely to elicit an incriminating response. Innis, 446 U.S. at 301-301, 100 S.Ct. at 1682. Additionally, where a defendant makes a statement without being questioned or pressured by a government agent, the statement is admissible, if the statement was freely and voluntarily made by the defendant. Colorado v. Connelly, 479 U.S. 157, 164, 107 S.Ct. 515, 520 (1986); Michigan v. Tucker, 417 U.S. 433, 441, 94 S.Ct. 2357, 2362 (1974). Given the trial court's findings that the appellant initiated the discussion with Detective Brown and that Detective Brown did not pose any statements to the appellant reasonably likely to elicit an incriminating response, we hold that the trial court did not err in concluding that the appellant's statement was not the product of unconstitutional custodial interrogation. Accordingly, the motion to suppress the statement was properly denied. This issue is without merit.

### B. Statement as Hearsay

The appellant next challenges the admissibility of the above statement to Detective Brown, upon the additional ground that the statement constitutes inadmissible hearsay. The statement was admitted as a statement "offered against a party that is (A) the party's own statement." See Tenn. R. Evid. 803(1.2). A "statement" is defined as "(1) an oral or written **assertion**." see Tenn. R. Evid. 801(a) (emphasis added). The appellant argues that his remarks to Detective Brown do not constitute an assertion and, therefore, fail to qualify as admissible hearsay. In this regard, the appellant notes that, although the Rules of Evidence fail to define the term "assert," the term is defined elsewhere as "to state as true; declare; maintain." See BLACK'S LAW DICTIONARY 116 (6TH ed. 1990); WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY, UNABRIDGED v.1 p 131 (1981). Under this definition, the appellant maintains that his "remarks" do not constitute an "assertion" and, hence, a "statement," because he was "merely making a legal conclusion as to the appropriate charge."

Our rules of evidence define hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."[3] Tenn. R. Evid. 801(c). A "statement" is then defined as an oral or written assertion or nonverbal conduct intended as an assertion. Tenn. R. Evid. 801(a). "Assertion" is not defined in the Rules, but "has the connotation of a forceful or positive declaration." See WEBSTER'S NINTH NEW COLLEGIATE

---

[3]We note that our Rule 801(a), (b), and (c) are verbatim of Federal Rule of Evidence 801(a), (b), and (c).

DICTIONARY 109 (1985 ed.). The definition of 'statement' assumes importance because the term is used in the definition of hearsay in subdivision (c).[4] The key to the definition is that nothing is an assertion unless intended to be one. See Advisory Committee's Note, Fed. R. Evid. 801(a). Consequently, the effect of the definition of "statement" is to exclude from the operation of the hearsay rule "all evidence of conduct, verbal or nonverbal, not intended as an assertion." See Advisory Committee's Note, Fed. R. Evid. 801(a); see also Advisory Commission Comments, Tenn. R. Evid. 801.

In determining whether certain conduct constitutes an assertion, the Advisory Committee Note provides "It can scarcely be doubted that an assertion made in words is intended by the declarant to be an assertion. Hence, verbal assertions readily fall into the category of the statement." Advisory Committee's Note, Fed. R. Evid. 801. Notwithstanding, not all verbal utterances are readily ascertainable as assertions, such as the case now before this court. An utterance must, in order to be an assertion, be offered with the intent to state that some factual proposition is true. See generally United States v. Lewis, 902 F.2d 1176, 1179 (5th Cir. 1990) (citing D. Binder, Hearsay Handbook § 2.03 (2d ed. & 1989 supp); Inc. Publishing Corp. v. Manhattan Magazine, Inc., 616 F.Supp. 370, 388 (S.D.N.Y. 1985)); United States v. Zenni, 492 F.Supp. 464, 469 (E.D. Ky. 1980). When an utterance is offered on the theory that it is not a statement, and hence, not hearsay, a preliminary determination is required to determine whether an assertion is intended. Advisory Committee's Note, Fed. R. Evid. 801(a).

In certain circumstances, an utterance, while not directly assertive in form, may implicitly contain certain assertions. See generally NEIL P. COHEN ET AL., TENNESSEE LAW OF EVIDENCE §801.3, at 494 (3d ed. 1995).[5] Implicit assertions are not always readily apparent; to illustrate:
> an inspector at an airport security station might run a metal detector over a passenger and say "go on through." In the absence of the inspector, would testimony of this event be objectionable hearsay, if offered for the proposition that the passenger did not have a gun on him at that time? . . . If an assertion were intended the evidence would

---

[4]"An out of court utterance must have two characteristics before it is rendered inadmissable as hearsay: It must be a 'statement'–that is a verbal assertion or conduct intended as an assertion, and it must be offered to probe the truth of the matter it asserts." See Weaver v. Tech Data Corp., 66 F.Supp.2d 1258, 1264 (M.D. Fla. 1999) (citing United States v. Cruz, 805 F.2d 1464, 1477 (11th Cir. 1986)).

[5]"The term 'matter asserted' as employed in [Federal] Rule 801(c) and at common law includes both matters directly expressed and matters the declarant necessarily implicitly intended to assert. When the declarant necessarily intended to assert the inference for which the statement is offered, the statement is tantamount to a direct assertion and therefore is hearsay. . .. To illustrate, the question 'Do you think it will stop raining in one hour?' contains the implicit assertion that it is currently raining. The fact that it is currently raining is a necessary foundation fact which must be assumed true for the question asked to make sense." Id. (quoting MICHAEL H. GRAHAM, HANDBOOK OF FEDERAL EVIDENCE 708-709 (3d ed. 1991)).

be excluded [unless meeting a recognized hearsay exception.] If not, it would be admissible. . . .

Zenni, 492 F. Supp. at 469 n.21. Other implied assertions are obvious; for example, the question: "Why did you stab me Brutus?" impliedly asserts that the questioner was stabbed by Brutus." See Brown v. Commonwealth, 487 S.E.2d 248, 252 (Va. App. 1997) (citing Carlton v. State, 681 A.2d 1181, 1184 (Md. App.), cert. denied, 686 A.2d 634 (Md. 1996)). Likewise, the question "Do you need change?" impliedly asserts that the questioner has change. Id. As demonstrated by these examples, the extent to which an utterance may or may or may not contain an implied assertion depends on the nature of the utterance and the circumstances surrounding it. Id.

In the present case, the appellant commented, "the charge of theft is not correct, it should have been unauthorized use of a vehicle since it was my parents' vehicle." It is apparent from this statement that the appellant was necessarily implying or asserting that he had been driving the vehicle. The statement is an assertion. Moreover, the State offered the statement to prove by implication the appellant's identity as the perpetrator of the charged offenses. Thus, we conclude that the statement was offered for the truth of the matter asserted and is not admissible unless it meets a recognized exception to the rule against hearsay.[6]

Tenn. R. Evid. 803(1.2)(A) provides a hearsay exception for a statement offered against a party that is "the party's own statement in either an individual or a representative capacity." See NEIL P. COHEN ET AL., TENNESSEE LAW OF EVIDENCE §803 (1.2).2, at 513. This means that any assertion a party spoke, wrote, or did may be used against that party as an admission. Id. The rule is simple and absolute.[7] Since the declarant is a party in the case, he or she can testify, explain,

---

[6] We note that if the utterance is not an assertion, then the statement is not hearsay and is admissible if it satisfies general admissibility requirements, e.g. relevance, probative value, etc.

[7] Our supreme court has noted:
The hearsay evidence rule rests primarily upon the basis that the declarant is not present and available for cross-examination. It is for this reason that where the alleged declarant is a criminal defendant, strictly speaking the rule does not come into play. The mere fact that an assertion is offered to prove its truth and that cross-examination would be helpful does not make the statement hearsay where a party defendant in a criminal action is the declarant.

. . .Paine, Tennessee Law of Evidence, Section 54, [provides], "(a)n admission is hearsay because it is usually unsworn and uncross-examined and is offered as substantive evidence." Therefore, [Paine states], "(w)e make an exception . . . since we believe that the party-declarant is estopped from claiming that his prior statements are unreliable." This accords with Tennessee Law.

We note that Rule 801, Federal Rules of Evidence, Section (d)(2), provides that a

-8-

amplify or deny the statement. Id. Accordingly, the appellant's statement is admissible as an exception to the rule against hearsay and was properly admitted by the trial court. This issue is without merit.

## II. Failure to Grant a Mistrial

Prior to the start of the appellant's trial, the appellant requested a continuance which was denied by the trial court. In denying the motion, the trial court advised the jury

> Ladies and Gentlemen, the case I anticipate trying today is State of Tennessee v. David Land. The defendant has filed some late-filed notices this morning, which is going to cause us to take a short recess and a delay. I do not anticipate our delay will be over 10 minutes.

The appellant contends that the court's admonition to the jury denied him a fair trial by "plant[ing] the seed in the venire's collective mind that the defense was in a state of unpreparedness, that it was seeking to unnecessarily delay the proceedings, and that the defense's motions were an irritant to the Court." The appellant moved for a mistrial which was denied by the trial court. The appellant contests the trial court's ruling.

A mistrial should be declared in criminal cases only in the event that a manifest necessity requires such action. State v. Millbrooks, 819 S.W.2d 441 (Tenn. Crim. App. 1991). In other words, a mistrial is an appropriate remedy when a trial cannot continue, or a miscarriage of justice would result if it did. State v. McPherson, 882 S.W.2d 365, 370 (Tenn. Crim. App.1994). The decision to grant a mistrial lies within the sound discretion of the trial court and this court will not interfere with the exercise of that discretion absent clear abuse appearing on the face of the record. See State v. Hall, 976 S.W.2d 121, 147 (Tenn. 1998), cert. denied, – U.S. –, 119 S.Ct. 1501 (1999)(citing State v. Adkins, 786 S.W.2d 642, 644 (Tenn. 1990)). Moreover, the burden of establishing the necessity for mistrial lies with the party seeking it. State v. Williams, 929 S.W.2d 385, 388 (Tenn. Crim. App. 1996).

---

statement is not hearsay if:

The statement is offered against a party and is (A) his own statement.

This appears to us as a better view; however, whether a criminal defendant's own statement be treated as an exception to the hearsay evidence rule, or as an admission not governed by the rule, the result is the same. The admission is competent proof.

State v. Jones, 598 S.W.2d 209, 223 (Tenn. 1980), *overruled on other grounds by*, State v. Shropshire, 874 S.W.2d 634 (Tenn. Crim. App. 1993), and, *superseded by statute as stated in*, State v. Shuck, 953 S.W.2d 662 (Tenn. 1997).

The trial court, in the present case, informed the jury as to the status of the proceedings before it. No comment was made upon the evidence nor was a erroneous instruction of the applicable law provided. While the comments could be construed as a criticism of defense counsel, the comment alone is not sufficient to require the declaration of a mistrial. See generally State v. Moffitt, 754 S.W.2d 584, 589 (Mo. App. 1988).

The trial court has a deep responsibility for the orderly and dignified conduct of courtroom proceedings. When the circumstances are those which may imprison a criminal defendant, the tension of the court room drama and the human frailties and emotional factors inevitably involved serve to make the judge's task more difficult. Order and decorum must be maintained. The factual inquiry must be conducted within the issues and at all times under the applicable rules of law. The judge must not indicate a belief in either the guilt or innocence of the accused nor may he let such belief be reflected or even conjectured by the jury in his treatment of either counsel. See State v. Caughron, 855 S.W.2d 526, 536 (Tenn. 1993) (citing Brooks v. State, 213 S.W.2d 7, 10 (Tenn. 1948)).

With consideration of these principles and the context of the comments, we conclude that the trial court's comments challenged by the appellant did not infringe upon the appellant's right to a fair trial. Rather, the comments were merely an attempt to inform the jurors of the status of the case for which they had been summoned. Accordingly, we conclude that the trial court did not abuse its discretion in denying the appellant's motion for mistrial. This issue is without merit.


### III. Excited Utterance

During the State's case-in-chief, Trooper Cash testified, over defense objection, concerning statements made to him by Mrs. Land. The challenged statements arose from a meeting between Trooper Cash and Mrs. Land soon after the occurrence of the offenses. Specifically, upon arriving at the Land residence, Trooper Cash informed Mrs. Land that her vehicle had been wrecked a short distance from her house. Trooper Cash testified that Mrs. Land became angry, began cursing and stated to him that the appellant "stole my car, he stole my car." Trooper Cash then received permission to check the appellant's bedroom. The appellant was not in his bedroom, however, numerous empty beer cans cluttered the floor. Mrs. Land then exclaimed, "He's drunk. He stole my car." She explained that "her keys were in her purse, he got my keys and stole my car." The trial court admitted the statements as excited utterances under Tenn. R. Evid. 803(2). The appellant argues that the trial court erred in permitting Trooper Cash to testify as to Mrs. Land's exclamations that the appellant "stole her car." Specifically, he asserts that Mrs. Land did not have any personal knowledge, as required by Tenn. R. Evid. 602, that the appellant "stole her car;" rather "she had merely speculated that the [appellant] had taken her car that night."

Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. Tenn. R. Evid. 801. Hearsay statements, in general, are inadmissible. Notwithstanding, the reliability and circumstantial guarantees of trustworthiness of certain nontestimonial statements have permitted courts to carve out various limited exceptions to the hearsay rule. One such exception is commonly referred to as the

excited utterance exception. The admission of excited utterances is governed by Tenn. R. Evid. 803(2), which admits statements relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition. The underlying theory of this exception is that circumstances may produce a condition of excitement which temporarily stills the capacity of reflection and produces utterances free of conscious fabrication. For a statement to qualify as an excited utterance, the following criteria must be established:

(1) there must be a startling event or condition that causes the stress of excitement;

(2) the statement must relate to the startling event or condition; and

(3) the statement must be made while the declarant was under the stress of excitement.

See NEIL P. COHEN, ET AL., TENNESSEE LAW OF EVIDENCE § 803(2).2, at 533-534. The only competency requirement for an excited utterance under Rule 803(2) is that the declarant must have had an opportunity to observe the facts contained in the extrajudicial statement. See NEIL P. COHEN ET AL., TENNESSEE LAW OF EVIDENCE § 803(2).3, at 535. See also Tenn. R. Evid. 602. Thus, an excited utterance is inadmissible if the declarant lacked personal knowledge.[8]

The appellant concedes that the statements satisfy the 803(2) definition of an excited utterance. Notwithstanding, he argues that the statements fail to satisfy the personal knowledge requirement of Rule 602, which provides:

A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may, but need not, consist of the witness's own testimony.

Again, one of the requirements for the admission of an excited utterance is that the declarant appear to have had an opportunity to personally observe the matter of which he or she speaks. See 6 Wigmore, Evidence § 1751, p. 222; McCormick, Evidence (3d ed.), § 297, p. 858. While foundationally, the declarant must have personal knowledge, that knowledge may be inferred from the statements themselves and the surrounding facts and circumstances. See State v. Rawlings, 402 N.W.2d 406, 409 (Iowa 1987). In determining whether a witness is competent for purposes of Rule 602, the trial court must determine whether a witness had a sufficient opportunity to perceive the

---

[8] Admissible testimony is limited to matters of which the witness has acquired personal knowledge through any of [the witness's] own senses. . . . . . .[T]o be admitted pursuant to an exception contained in Rule 803 or 804, the declarant of the extrajudicial statement must also be shown to have personal knowledge as to the matter related.

Michael H. Graham, Handbook of Federal Evidence § 602.1 at 392-93 (3d ed. 1991).

subject matter about which he or she is testifying. See NEIL P. COHEN ET AL., TENNESSEE LAW OF EVIDENCE, § 602.4, p. 313. Thus, the party offering the testimony must introduce sufficient evidence to support a jury finding that the witness had personal knowledge of the matter. Id.

While the rule fails to define what constitutes "knowledge," the rule does not require "absolute certainty." NEIL P. COHEN ET AL., TENNESSEE LAW OF EVIDENCE, § 602.4, p. 314. Nevertheless, the witness/declarant's statement may not be based on mere speculation. Id. For example, the Arizona Supreme Court held that it was error to admit hearsay statements regarding the identity of the person who had placed a bomb under the declarant's car, since there was no showing that the declarant had personal knowledge of the bomber's identity. See State v. Adamson, 665 P.2d 972 (Ariz.), cert. denied, 464 U.S. 865, 104 S.Ct. 204 (1983). The court found error despite its belief that the statements otherwise qualified as both excited utterances and dying declarations. According to the court:

> There is . . . a general requirement imposed on declarations coming in under all exceptions to the hearsay rule that the declarant, like witnesses, must have had an opportunity to observe or personal knowledge of the fact declared. State v. Mincey, 636 P.2d 637 (Ariz. 1981); State v. Dixon, 489 P.2d 225 (Ariz. 1971); Ariz. R. Evid. 602.

Adamson, 665 P.2d at 977. Indeed, the court held that the declarant's statements should not have been admitted because the statements were not based on events perceived by the declarant through one of the physical senses. Id. See also Jones v. State, 12 S.W. 704 (Ark. 1889) (when declarant could not and did not see who shot him, statement identifying shooter properly excluded); State v. Weir, 569 So.2d 897, 900 (Fla. App. 1990), *decision quashed, holding approved*, 591 So.2d 593 (Fla. 1991) (evidence showing declarant did not accurately observe facts basis for court's exclusion of dying declaration); People v. Kent, 404 N.W.2d 668, 671 (Mich. App. 1986)(hearsay statements identifying defendant as perpetrator excluded absent proof that declarant had personal knowledge that defendant started fire).

In the present case, there is no evidence that Mrs. Land had personal knowledge that the appellant took the vehicle and was driving the vehicle on the night of the offense. The failure of the State's proof to show that Mrs. Land either saw or otherwise perceived the appellant's taking of her vehicle leaves the record in doubt as to whether her statement that "he stole my car, he stole my car" was an expression of Mrs. Land's knowledge or merely an expression of speculation. Accordingly, the admission of Mrs. Land's statement to Trooper Cash upon arriving at the Land residence was error. The trial court's error, however, does not justify reversal of the judgment. Other evidence exists regarding the appellant's guilt. We conclude the outcome of the trial would not have been different had the statements not been presented to the jury. Accordingly, we find the error harmless. Tenn. R. App. P. 36(b); Tenn. R. Crim. P. 52(a).

### IV. Admission of Mrs. Land's Statements to Detective Brown

During direct examination of Detective Brown, the State attempted to elicit statements made

by Mrs. Land to Detective Brown during a September 8, 1998, telephone conversation.[9] The trial court sustained defense objection finding the statements made by Mrs. Land during the conversation constituted inadmissible hearsay. Notwithstanding, it was during this examination that Brown was permitted to testify concerning the appellant's September 21st statement made in the General Sessions hallway that "the charge should have been unauthorized use of a motor vehicle, instead of theft, because it was his parents' vehicle."[10] During cross-examination of Detective Brown, defense counsel repeatedly questioned Brown regarding the State's proof of intent to support the charge for theft of the vehicle. Bound by the court's earlier ruling, Brown was unable to relate his telephone conversation with Mrs. Land which substance was the proof supporting the theft charge. Thus, the inference was raised that the State had no proof of a theft and had wrongfully charged the appellant of the crime. On re-direct, the State again inquired as to Mrs. Land's September 8th statements to Detective Brown. The State asserted that the defense had "opened the door" by inquiring into proof of intent to support the theft charge. The trial court agreed that the defense "opened the door" and permitted the State to introduce the hearsay statements of Mrs. Land which it had previously held inadmissible.

Clearly, the statements of Mrs. Land made during the telephone conversation with Detective Brown constitute hearsay and do not fall within a recognized hearsay exception. See Tenn. R. Evid. 801. Notwithstanding, we conclude that the statements were properly admitted during redirect examination under the doctrine of curative admissibility.[11] Most often employed in criminal cases where the "door" to a particular subject is opened by defense counsel on cross-examination, the doctrine of curative admissibility permits the State, on redirect, to question the witness to clarify or explain the

---

[9]The substance of the statements related that Mrs. Land informed Detective Brown that the appellant had removed the keys from her pocketbook, took her vehicle, and had done so without her permission.

[10]Although the charge of theft of the vehicle was dismissed immediately prior to the start of trial, testimony was related by Detective Brown during direct examination that the appellant had been charged with this offense by the Franklin Police Department.

[11]Although Tennessee has not expressly adopted the doctrine of curative admissibility, previous decisions of this court reflect an implicit adoption of the same. See, e.g., State v. Chearis, 995 S.W.2d 641, 645 (Tenn. Crim. App. 1999) (officer permitted to testify on redirect examination to previously excluded evidence because defense "opened the door" by eliciting on cross-examination the basis for the search of the defendant); Harrison v. State, 527 S.W.2d 745, 748 (Tenn. Crim. App.), cert. denied, (Tenn. 1975) (defense called Chancery Court Clerk to testify regarding certain divorce matters between defendant and deceased, defense counsel did not introduce petition as exhibit, State permitted to cross-examine clerk on specific allegations in bill, since defense counsel had "opened the door"); State v. Raymond L. Covington, No. 01C01-9109-CC-00267 (Tenn. Crim. App. at Nashville, May 13, 1992) (defense counsel opened door by direct questioning of witness, prosecutor was entitled to rebut the appellant's insinuation by showing that the tape was not beneficial to either State or defense).

matters brought out during, or to remove or correct unfavorable inferences left by, the previous cross-examination. See People v. Manning, 695 N.E.2d 423, 433 (Ill. 1998) (citations omitted). This doctrine provides that "[w]here a defendant has injected an issue into the case, the State may be allowed to admit otherwise inadmissable evidence in order to explain or counteract a negative inference raised by the issue defendant injects." See State v. Armentrout, 8 S.W.3d 99, 111 (Mo. 1999) (citing State v. Weaver, 912 S.W.2d 499, 510 (Mo. banc 1995), cert. denied, 519 U.S. 856, 117 S.Ct. 153 (1996)); see also Rastall v. CSX Transportation, Inc., 697 A.2d 46, 52 (D.C. 1997) (in the interest of fairness, otherwise inadmissible evidence may be admitted to the extent necessary to remove prejudice when a party opens the door to its admission); U.S. v. Monroe, 437 F.2d 684, 686 (D.C. Cir. 1970) (doctrine of "curative admissibility" allows one party to introduce evidence that might otherwise be excluded to counter unfair prejudicial use of the same evidence by the opposing party); 21 Fed. Prac. & Proc. Evid. § 5039 (1977). In other words, "[i]f A opens up an issue and B will be prejudiced unless B can introduce contradictory or explanatory evidence, then B will be permitted to introduce such evidence, even though it might otherwise be improper." Manning, 695 N.E.2d at 433 (citations omitted).

The rule is derived from the fundamental guarantee of fairness. That is, the rule operates to prevent one party from manipulating the rules of evidence so as to leave the jury with feelings about the case that are unjustified, even though the jury's emotional response to the case is, theoretically, not a consideration in determining admissibility. See 22 Fed. Prac. & Proc. Evid. § 5165. Specifically, in a criminal case, "[t]he rule operates to prevent an accused from successfully gaining exclusion of inadmissible prosecution evidence and then extracting selected pieces of this evidence for his own advantage, without the Government being able to place them in their proper context." Lampkins v. United States, 515 A.2d 428, 431 (D.C. 1986) (citations omitted).

Notwithstanding, the doctrine's applicability is limited by, "the necessity of removing prejudice in the interest of fairness." Crawford v. United States, 198 F.2d 976, 979 (1952) (D.C. Cir. 1952) (citations omitted). It is not an unconstrained remedy permitting introduction of inadmissible evidence merely because the opposing party brought out evidence on the same subject. Manning, 695 N.E.2d at 434 (citation omitted). The rule is protective and goes only so far as is necessary to shield a party from adverse inferences and is not to be converted into a doctrine for injecting prejudice. Id. (citation omitted). Only that evidence which is necessary to dispel the unfair prejudice resulting from the cross-examination is admissible. United States v. Winston, 447 F.2d 1236 (D.C. Cir. 1971). See also Dyson v. United States, 450 A.2d 432, 454 (D.C. 1982) (citations omitted) (introduction of incompetent or irrelevant evidence by a party opens the door to admission of otherwise inadmissible evidence only to extent necessary to remove any unfair prejudice which might otherwise have ensued from the original evidence). Since the application of the doctrine of curative admissibility is based on the notion that the jury might be misled if contradictory evidence was excluded, the doctrine should not justify admission of that evidence when it is likely to do more harm in this respect than good. See 27 Fed. Prac. & Proc. Evid. § 6096 (1990).

When constitutional rights are involved, the court must be particularly certain that the case is appropriate for curative admissibility by requiring a clear showing of prejudice before the open the door rule of rebuttal may be involved. Lampkins, 515 A.2d at 431 (citations omitted). If the trial court

decides to admit such testimony on a theory of curative admissibility, however, its decision will not be reversed on appeal unless the appellant can demonstrate a clear abuse of discretion. See generally Chearis, 995 S.W.2d at 645. In the present case, the record reflects that defense counsel repeatedly posed to Detective Brown the unanswerable question as to the State's proof supporting the appellant's intent for the theft offense, *i.e.*, "where is you evidence of [the appellant's] intent." Although the issue of the appellant's intent for the theft charge was irrelevant as the charge itself had been *nolled* by the State, the appellant's voluntary interjection of the issue, absent objection by the State, "opened the door" for the admission of otherwise inadmissible evidence to the extent necessary to remove the unfair prejudice. See Lampkins, 515 A.2d at 431 (citation omitted); see also State v. McNeil, 518 S.E.2d 486, 501 (N.C. 1999), *petition for certiorari filed*, (Jan. 7, 2000) ("The law 'wisely permits evidence not otherwise admissible to be offered to explain or rebut evidence elicited by the defendant himself.'"). Assuming that the State would not be permitted to place the fact in the proper context, defense counsel's cross-examination was a calculated move intended to relay to the jury the inference that the appellant was arrested on the charge of theft with no basis or proof. Thus, the State could introduce otherwise inadmissible evidence to the extent necessary to remove the unfair prejudice which might otherwise have ensued from the original evidence. See California Ins. Co. v. Allen, 235 F.2d 178, 180 (5th Cir. 1956).

We conclude that the trial court correctly determined that Mrs. Land's statements relating that the appellant had taken her keys from her purse and had taken the vehicle were admissible on redirect examination. These statements were necessary to dispel the prejudice that the appellant was arrested absent proof. Thus, we conclude that the trial court did not abuse its discretion by permitting the jury to hear the out-of-court statements of Mrs. Land. See generally Chearis, 995 S.W.2d at 645 ("admissibility of testimony and other evidence, as well as the scope of redirect examination, is within the discretion of the trial court, whose ruling will not be reversed absent an abuse of that discretion").

Moreover, we recognize that the appellant's Sixth Amendment right to confront witnesses against him is implicated by the admission of the hearsay statements. See generally Ohio v. Roberts, 448 U.S. 56, 62-65, 100 S.Ct. 2531, 2537-2539 (1980). In this respect, we conclude that no violation of the appellant's right to confrontation resulted as the declarant, the appellant's mother, was a witness called by both the State and the defense.[12] Thus, the appellant had the opportunity to confront this witness regarding the out of court statements. Accordingly, this issue is without merit.

### V. Sufficiency of the Evidence

In his final issue, the appellant argues that the evidence is insufficient to support his conviction. Specifically, he contends the proof introduced at the trial failed to establish beyond a reasonable doubt his identity as the driver of the vehicle. In this regard, he asserts that no direct evidence exists

---

[12]In addressing confrontation violations, other courts have held that "[where] the prejudice was obvious and substantial, the fact that appellant's Sixth Amendment right to confront the witnesses against him was implicated does not prevent application of the "open-the-door rule of rebuttal." See Winston, 447 F.2d at 1240-1241.I

-15-

establishing his identity as the driver. In essence, the appellant argues that the "finger of guilt" does not point unerringly to him as the perpetrator of this crime.

Initially, a defendant is cloaked with the presumption of innocence. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). However, a jury conviction removes this presumption of innocence and replaces it with one of guilt, so that on appeal a convicted defendant has the burden of demonstrating that the evidence is insufficient. Id. In determining the sufficiency of the evidence, this court does not reweigh or reevaluate the evidence. State v. Mann, 959 S.W.2d 503, 518 (Tenn. 1997). On appeal, the State is entitled to the strongest legitimate view of the evidence and all legitimate or reasonable inferences which may be drawn therefrom. State v. Harris, 839 S.W.2d 54, 75 (Tenn. 1992), cert. denied, 507 U.S. 954, 113 S.Ct. 1368 (1993). It is the appellate court's duty to affirm the conviction if the evidence viewed under these standards was sufficient for any rational trier of fact to have found the essential elements of the offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 317, 99 S.Ct. 2781, 2789 (1979); State v. Cazes, 875 S.W.2d 253, 259 (Tenn.1994), cert. denied, 513 U.S. 1086, 115 S.Ct. 743 (1995); Tenn. R. App. P. 13(e). This rule is applicable to findings of guilt predicated upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990).

Circumstantial evidence alone may be sufficient to support a conviction. See State v. Leming, 3 S.W.3d 7, 13 (Tenn. Crim. App. 1998) (citing State v. Smith, 868 S.W.2d 561, 569 (Tenn. 1993)). However, if a conviction is based purely on circumstantial evidence, the facts and circumstances must be so overwhelming as to exclude any other explanation except for the defendant's guilt. State v. Tharpe, 726 S.W.2d 896, 900 (Tenn.1987). In addition, "it must establish such a certainty of guilt of the accused as to convince the mind beyond a reasonable doubt that the [appellant] is the one who committed the crime." Tharpe, 726 S.W.2d at 896. When reviewing the sufficiency of circumstantial evidence, this court must remember that the jury decides the weight to be given to circumstantial evidence, the inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence. Leming, 3 S.W.2d at 13.

The State presented proof at trial establishing that state troopers observed a vehicle operated by a white male traveling at an excessive rate of speed on I-65. The troopers pursued the vehicle. Despite the patrol car's emergency lights and siren, the driver failed to yield to the troopers' pursuit. As a result of its excessive speed, the vehicle lost control and left the roadway. By the time the troopers arrived, the driver had disappeared. The vehicle was registered to the appellant's parents. The appellant resided with his parents. Both the appellant and the vehicle had disappeared from the residence. The wreck occurred a short distance from the appellant's residence. After his arrest, the appellant admitted to Detective Brown that he should have only been charged with unauthorized use of the vehicle because the car belonged to this parents. During the trial, the appellant presented the testimony of his mother to suggest that another person may have committed the offenses. The jury rejected this evidence in favor of the proof submitted by the State. We conclude that this evidence excludes every reasonable hypothesis but that of the appellant's guilt for the offenses of felony evading arrest and driving on a revoked license. See Tenn. Code Ann. §39-16-603(b)(1)(1997); Tenn. Code Ann. § 55-50-504(a)(2) (1998). This issue is without merit.

For the reasons set forth herein, we affirm the judgments of conviction entered by the Williamson County Circuit Court.