IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs May 9, 2012

**STATE OF TENNESSEE v. RUBY GRAHAM**

**Appeal from the Circuit Court for White County**
**No. 3488     David A. Patterson, Judge**

**No. M2010-01666-CCA-R3-CD - Filed May 18, 2012**

The defendant, Ruby Graham, appeals from her White County Circuit Court jury conviction of the sale of morphine, *see* T.C.A. § 39-17-417(a)(3), claiming that the trial court erred by denying her request for a mistrial and by refusing her bid for judicial diversion. Because the defendant failed to prepare an adequate record for review of either issue, we must presume that the rulings of the trial court are correct, and we affirm.

**Tenn. R. App. P. 3; Judgment of the Circuit Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the Court, in which JOHN EVERETT WILLIAMS and JEFFREY S. BIVINS, JJ., joined.

Howard Upchurch, Pikeville, Tennessee, for the appellant, Ruby Graham.

Robert E. Cooper, Jr., Attorney General and Reporter; Rachel E. Willis, Assistant Attorney General; Randall A. York, District Attorney General; and Mark Tribble, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

The White County grand jury charged the defendant with four counts of the sale of morphine occurring on May 21, 2008, June 3 and 11, 2008, and August 6, 2008. The parties agreed to sever the offenses, and count four of the indictment, alleging the sale of morphine on August 6, 2008, proceeded to trial on January 11, 2010.

Initially, we note that a complete transcript of the testimony at trial has not been included in the record on appeal. The single transcript in the appellate record contains only the testimony of the State's witness Lora Dawn Cazan. Ms. Cazan testified that she began

working as a confidential informant for the Tennessee Bureau of Investigation ("TBI") after becoming acquainted with TBI Special Agent Daren Shockey at her church. She explained that she had been addicted to prescription narcotics and that her addiction had led to arrests on previous occasions. She said that Special Agent Shockey told her she could be paid to assist in the controlled purchase of narcotics. Ms. Cazan testified that in August of 2008, she lived on property that belonged to the defendant and that she was confident she could purchase drugs from the defendant.

Ms. Cazan explained the procedure for the controlled purchases:

I'd go meet him at the Church of God. When we got there, I'd get out, . . . they'd all search my car, they would search me, make me turn my pockets inside out. Usually there was a woman so she would pat me down, you know, and make me pull my bra out and make sure there was nothing in it. They would put the wire on me and they would tell me to go just straight there, straight back, I don't talk to nobody, . . . I don't stop and let anyone in my car . . . . And as soon as I'd get the drugs, I'd go straight back and hand them the drugs and they would search me again to make sure I didn't have anything else on me and search my car to make sure I didn't get something . . . while I was there or whatever.

She said that the TBI agents provided her with money to purchase the drugs and then gave her payment for her services when she returned. Ms. Cazan recalled that she called the defendant to make sure the defendant was home and that the defendant had drugs for sale before the transaction on August 6, 2008. Ms. Cazan said that she was searched and fitted with recording equipment before proceeding alone to the defendant's residence. She said that she paid the defendant $180 for six 60 milligram morphine tablets and that she "handed [the defendant] the money, she handed [Ms. Cazan] the pills." Ms. Cazan placed the pills in her pocket and drove back to the church, where she turned the pills over to the TBI and was paid for her efforts.

An audio recording of the August 6, 2008 transaction was played for the jury.

During cross-examination, Ms. Cazan admitted that she was still struggling with an addiction to prescription pain killers and had used morphine pills not prescribed to her in the week prior to trial. She explained that she was prescribed two hydrocodone pills a day to cope with chronic pain from injuries sustained in a car accident in May 1997. Ms. Cazan acknowledged problems with her memory as a result of the accident as well as her

history of drug-related arrests.

At the conclusion of the trial, the jury convicted the defendant as charged of the sale of morphine. Following a sentencing hearing, the trial court denied the defendant's request to be placed on judicial diversion and imposed a sentence of three years to be served on probation. The defendant filed a timely but unsuccessful motion for new trial followed by a timely notice of appeal.

In this appeal, the defendant contends that the trial court erred by refusing her request for a mistrial and by denying her request for judicial diversion. We consider each claim in turn.

*I. Mistrial*

The defendant first asserts that the trial court should have granted a mistrial following Ms. Cazan's testimony that she had been purchasing drugs from the defendant "for a long time" prior to the August 6, 2008 controlled buy at issue at trial. The State contends that the defendant has waived our consideration of this issue by failing to include a complete transcript of the trial in the appellate record. In the alternative, the State argues that the trial court did not err by refusing to grant a mistrial.

The decision to grant or deny a mistrial is entrusted to the sound discretion of the trial court, and this court will disturb the trial court's ruling in this regard only when there has been an abuse of the trial court's discretion. *See State v. Nash*, 294 S.W.3d 541, 546 (Tenn. 2009). "Normally, a mistrial should be declared only if there is a manifest necessity for such action." *State v. Saylor*, 117 S.W.3d 239, 250 (Tenn. 2003) (citing *State v. Millbrooks*, 819 S.W.2d 441, 443 (Tenn. Crim. App. 1991)). "'In other words, a mistrial is an appropriate remedy when a trial cannot continue, or a miscarriage of justice would result if it did.'" *Saylor*, 117 S.W.3d at 250 (quoting *State v. Land*, 34 S.W.3d 516, 527 (Tenn. Crim. App. 2000)). "The purpose for declaring a mistrial is to correct damage done to the judicial process when some event has occurred which precludes an impartial verdict." *State v. Williams*, 929 S.W.2d 385, 388 (Tenn. Crim. App. 1996). The burden of establishing the necessity for mistrial lies with the party seeking it. *Id*.

We agree with the State that the defendant has waived our consideration of this issue by failing to include a complete transcript of the evidence adduced at trial. The appellant bears the burden of preparing an adequate record on appeal, *see State v. Ballard*, 855 S.W.2d 557, 560 (Tenn. 1993), which includes the duty to "have prepared a transcript of such part of the evidence or proceedings as is necessary to convey a fair, accurate and complete account of what transpired with respect to those issues that are the bases of appeal,"

Tenn. R. App. P. 24(b). If the appellant fails to file an adequate record, this court must presume the trial court's ruling was correct. *See State v. Richardson*, 875 S.W.2d 671, 674 (Tenn. Crim. App. 1993). Our review of the propriety of the trial court's action in this case necessarily requires an evaluation of the challenged testimony in light of all the proof at trial. In this case, such review is impossible because of the limited transcript.

## *II. Denial of Judicial Diversion*

The defendant argues that the trial court erred by denying her request for judicial diversion. The State asserts that the defendant has again waived our consideration of this issue by failing to include a complete transcript of either the trial or the sentencing hearing. In the alternative, the State contends that the trial court did not err by denying the defendant's bid for judicial diversion.

"Judicial diversion" is a reference to the provision in Tennessee Code Annotated section 40-35-313(a) for a trial court's deferring proceedings in a criminal case. *See* T.C.A. § 40-35-313(a)(1)(A). Pursuant to such a deferral, the trial court places the defendant on probation "without entering a judgment of guilty." *Id.* To be eligible or "qualified" for judicial diversion, the defendant must plead guilty to, or be found guilty of, an offense that is not "a sexual offense or a Class A or Class B felony," and the defendant must not have previously been convicted of a felony or a Class A misdemeanor. *Id.* § 40-35-313(a)(1)(B)(i)(b), (c). Diversion requires the consent of the qualified defendant. *Id.* § 40-35-313(a)(1)(A).

Eligibility, however, does not automatically translate into entitlement to judicial diversion. *See State v. Bonestel*, 871 S.W.2d 163, 168 (Tenn. Crim. App. 1993), *overruled on other grounds by State v. Hooper*, 29 S.W.3d 1, 9 (Tenn. 2000). The statute states that a trial court may grant judicial diversion in appropriate cases. *See* T.C.A. § 40-35-313(a)(1)(A) (citing that court "may defer further proceedings"). Thus, whether an accused should be granted judicial diversion is a question entrusted to the sound discretion of the trial court. *Bonestel*, 871 S.W.2d at 168.

On appeal, this court must determine whether the trial court abused its discretion in failing to grant judicial diversion. *Cutshaw*, 967 S.W.2d at 344; *Bonestel*, 871 S.W.2d at 168. Accordingly, when a defendant challenges the denial of judicial diversion, we may not revisit the issue if the record contains any substantial evidence supporting the trial court's decision. *Cutshaw*, 967 S.W.2d at 344; *Bonestel*, 871 S.W.2d at 168.

Again, we agree with the State that the defendant has waived our consideration of this issue by failing to include a complete transcript of all relevant proceedings in the

record on appeal. Absent from the record are a complete transcript of the evidence adduced at trial and a transcript of the evidence presented by the parties at the sentencing hearing. Only the portion of the sentencing hearing containing the trial court's reasons for denying diversion is included in the record, and that is included as an attachment to the trial court's written order denying judicial diversion. The trial court specifically relied on the testimony of several witnesses to support the denial of judicial diversion. Without this proof in the record on appeal, review of the trial court's decision is impossible. Consequently, we must presume that the ruling of the trial court is correct. *See Richardson*, 875 S.W.2d at 674.

Accordingly, the judgment of the trial court is affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE