IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs May 11, 2004

## STATE OF TENNESSEE v. BRANDON SCOTT WATSON

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2002-I-1329      Seth Norman, Judge**

---

**No. M2003-01814-CCA-R3-CD - Filed July 13, 2004**

---

The Appellant, Brandon Scott Watson, appeals from the sentencing decision of the Davidson County Criminal Court.  In January of 2003, Watson pled guilty to two counts of burglary of an automobile, class E felonies.  Pursuant to a negotiated plea agreement, Watson received concurrent two-year sentences and, following a sentencing hearing, he was placed in the Community Corrections program.  On April 15, 2003, a warrant was issued, alleging that Watson had violated conditions of his behavioral contract.  Following an evidentiary hearing, the trial court revoked his community corrections sentences and modified the previously imposed concurrent sentences to reflect that they be served consecutively.  In this appeal, Watson contends that: (1) the trial court erred in revoking his community corrections sentence based on "unreliable  hearsay" evidence, specifically, the testimony of his community corrections case officer's referencing a report prepared by a Davidson County Drug Court investigator, who was not present to testify at the revocation hearing, and (2) the trial court erred in ordering his sentences to run consecutively.  After a review of the record, we find no reversible error and affirm the sentencing decision of the trial court.

**Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed**.

DAVID G. HAYES, J., delivered the opinion of the court, in which THOMAS T. WOODALL and JOHN EVERETT WILLIAMS, J.J., joined.

Jeffery A. DeVasher, Assistant Public Defender, Nashville, Tennessee, for the Appellant, Brandon Scott Watson.

Paul G. Summers, Attorney General and Reporter; Michael Moore, Solicitor General; Thomas E. Williams, III, Assistant Attorney General; Victor S. Johnson III, District Attorney General; and Dan Hamm, Assistant District Attorney General, for the Appellee, State of Tennessee.

# OPINION

## Factual Background

In October of 2002, the Appellant was charged by criminal information with two counts of burglary of an automobile. On January 6, 2003, the Appellant waived his right to prosecution by indictment or presentment and entered a plea of guilty to the crimes as charged. Pursuant to the negotiated plea agreement, the Appellant, as a Range I standard offender, received concurrent sentences of two years on each count, with the trial court to determine the manner of service. A sentencing hearing was held on February 12, 2003. The trial court ordered the Appellant to serve his sentences in the Community Corrections Program and, additionally, ordered the Appellant to obtain "intensive out-patient" drug treatment as a condition of his sentence.

Two months later, on April 15, 2003, a violation warrant was issued. The warrant alleged that the Appellant had violated his community corrections sentences in the following ways:

> Violation of Rule #1 which states to make full and truthful reports to the case officer. In that, Mr. Watson stated that he was stabbed at a Mapco by an unknown person. After investigating the incident, it is found that Mr. Watson was selling crack to an individual at a store. When he took the buyers money, he did not give the crack in return. Mr. Watson then assault[ed] the buyer. The buyer then pulled out a knife and stabbed Mr. Watson. The incident occurred at 12:30 a.m.

> Violation of Rule # 10 which states the offender shall follow a curfew of 7 p.m. In that, the offender was assaulted in a store parking lot at 12:30 p.m. which is past his 7 p.m. curfew.

Revocation proceedings began on June 9, 2003. Ashley Mondelli, a community corrections officer, testified that the Appellant was "on the intensive out-patient program" administered through the Davidson County Drug Court. She stated that the Appellant's community corrections case officer was Joseph Carroll, who was not present at the hearing. The State then asked, "And could you tell us any more of the circumstances surrounding that violation or the filing of the warrant?" Defense counsel objected on hearsay grounds, and the trial court sustained the objection. The trial court then granted the State's request to continue the hearing so that the Appellant's case officer could be present to testify.

On June 18, 2003, the State called Joseph Carroll to testify and inquired as to the basis for the violation warrant. Carroll responded, "The violation itself is based on an incident where our, Brandon had advised us that he had been involved in a, he had been assaulted. He indicated that he didn't know who his assailants were. We found out later that - -[.]" Defense counsel again objected upon hearsay grounds; however, this time, the trial court now overruled the objection. Carroll then testified that:

We found out later that, in fact, he had been involved in an altercation. And according to the report he did know his assailants. He was accused of making a drug deal and not delivering on the drugs, and the fight ensued after that and he ended up being stabbed. But this incident occurred after curfew and he had been given a verbal warning for a curfew violation a few weeks prior to that.

Carroll stated that the report to which he referred was prepared by Al Gray an investigator with the Davidson County Drug Court.

The defense called Shelly Lynn Gather, an eyewitness to the stabbing. She stated that she had stopped at a Nashville convenience store to get gas and "noticed three gentlemen on the side of the building . . . drinking beer." While she was pumping gas, Gather observed an African-American man approach the Appellant and the two men exchange words. According to Gather, the African-American man then "rushed" the Appellant and began stabbing him. She stated that the man "just ran over there and jumped [the Appellant]." She testified that she did not hear or see any evidence of a drug deal.

Lastly, the Appellant testified on his own behalf. He admitted that he was violating the terms of his community corrections sentence by consuming alcohol and breaking his curfew. The Appellant could not explain why he was at the convenience store. He claimed that he was not dealing drugs on the night he was stabbed, and he did not know the person who stabbed him. He also admitted that he was consuming alcohol while underage, as he was only nineteen years old on the evening he was stabbed.

Following the conclusion of proof, the trial court found that the Appellant had violated the terms of his behavioral contract and re-sentenced the Appellant to consecutive two-year terms to be served in the Department of Correction. The trial court concluded that:

> What I'm looking at . . . looks like on October the 11th of '01 he got 11/29, and that was suspended. On May the 14th of '02 he got 11/29 and that was suspended. On October the 11th '02 he got another six months and that was suspended. And then . . . he was arrested on this one on . . . 11/02.
>
> He was on probation when he got arrested for this one. He's been put on probation five times in just two years. And it . . . doesn't make any difference.
>
> I find he's violated the terms and conditions of his contract. I also find he's violated the terms and conditions under his Community Corrections contract and re-sentence him. I find he violated enhancement factor number eight. I'll run the sentences consecutive. . . .

It is from this sentencing decision that the Appellant now timely appeals.

-3-

## ANALYSIS

### I. Hearsay

The Appellant contends that the trial court violated his rights to confrontation and due process by admitting hearsay evidence. Specifically, he argues that the trial court erred by permitting Joseph Carroll to testify about a report prepared by Investigator Al Gray, who was not present at the revocation hearing. Carroll stated that, "according to the report," the Appellant was stabbed during a drug deal after he did not deliver the drugs as planned and that he did know his assailant.

The right to confrontation is contained in Amendment VI to the United States Constitution, which provides that the accused has the right "to be confronted with the witnesses against him[.]" Additionally, Article I, section 9 of the Tennessee Constitution explains that "the accused hath the right . . . to meet the witnesses face to face[.]" However, "the right to confront and cross-examine an adverse witness is 'not absolute and may be relaxed' in a probation[1] revocation hearing." *State v. Moss*, 13 S.W.3d 374, 386 (Tenn. Crim. App. 1999) (quoting *State v. Wade*, 863 S.W.2d 406, 407 (Tenn. 1993)). Moreover, "the right to cross-examine witnesses in such a proceeding may be denied by the trial court upon a finding of good cause." *Id.*; *see also Gagnon v. Scarpelli*, 411 U.S. 778, 786, 93 S. Ct. 1756, 1762 (1973). Regardless, "even where there is a showing of good cause, due process requires proof that the [evidence] is reliable." *Wade*, 863 S.W.2d at 408. In sum, this court has explained that hearsay evidence is admissible at a probation revocation hearing, thus depriving the probationer of the right to cross-examination, when minimum confrontation requirements are met including: (1) a specific finding by the trial court of "good cause" that would justify the denial of the defendant's right to confront and cross-examine an adverse witness and (2) a showing that the information contained in the hearsay testimony is reliable. *State v. Stephen E. Cline*, No. M2000-01674-CCA-R3-CD (Tenn. Crim App. at Nashville, Oct. 30, 2001).

Tennessee Rule Evidence 801(c) provides that hearsay "is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Generally, "hearsay is not admissible except as provided by [the Tennessee Rules of Evidence] or otherwise by law." Tenn. R. Evid. 802. Carroll referenced Gray's report, which contained information gathered from unidentified individuals, *i.e.*, that the Appellant did know his assailant and that he was involved in a drug deal. Thus, there are two layers of hearsay contained in the contested statement. The trial court did not specifically find that there was "good cause" for not calling Investigator Gray as a witness, and there was no attempt to introduce the report into evidence, thereby violating the Appellant's right to confrontation. Additionally, there is no significant showing in the record that either layer of hearsay is reliable. Therefore, notwithstanding the "lesser degree of formality and inflexibility" of a probation revocation hearing, we conclude that

---

[1] In deciding whether to revoke a community corrections sentence, courts should apply the same principles utilized in probation revocations. *State v. Harkins,* 811 S.W.2d 79, 83 (Tenn.1991).

the trial court erred in allowing this statement into evidence over the Appellant's objection. *Stephen E. Cline*, No. M2000-01674-CCA-R3-CD; *see generally Wade*, 863 S.W.2d 406.

Regardless, we find that the admission of this testimony is harmless beyond a reasonable doubt. *See* Tenn. R. Crim. P. 52(a); Tenn. R. App. P. 36(b). It is well-established that a conviction need not be reversed due to an error of constitutional dimensions as long as the State demonstrates "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *Chapman v. California*, 386 U.S. 18, 24, 87 S. Ct. 824, 828 (1967); *see also State v. Anthony H. Dean*, No. W2000-01156-CCA-R3-CD (Tenn. Crim. App. at Jackson, Sept. 28, 2001). An alternate ground exists for revocation of the Appellant's sentences, namely violation of his curfew. This ground is sufficient to justify the revocation. Accordingly, "we conclude the outcome of the hearing would not have been different had the statement not been presented at the hearing." *Stephen E. Cline*, No. M2000-01674-CCA-R3-CD (quoting *State v. Land*, 34 S.W.3d 516, 530 (Tenn. Crim. App. 2000)).

## II. Consecutive Sentencing

Next, the Appellant submits that the trial court erred by imposing consecutive sentences. He argues that the trial court failed to conduct a sentencing hearing pursuant to the Criminal Reform Sentencing Act of 1989 and state its reasons for imposing consecutive sentences on the record. Moreover, he contends that the trial court imposed consecutive sentencing arbitrarily, as evidenced by the court's comments at the Appellant's initial sentencing hearing held on February 12, 2003.[2]

A trial court has the power, upon revocation of a community corrections sentence, to re-sentence a defendant to a period of incarceration up to the maximum for the offense originally committed, with credit for time already served in the Community Corrections program. Tenn. Code Ann. § 40-36-106(e)(4) (2003). The purpose of allowing the trial court to impose a new sentence is that the nature, circumstances, and frequency of the Appellant's violations may "warrant a different type of alternative sentence or incarceration." *State v. Ervin*, 939 S.W.2d 581, 583 (Tenn. Crim. App. 1996). The trial court may not, however, use the statute for the sole purpose of punishing a defendant for violating the community corrections sentence. *Id.*

---

[2]At the initial sentencing hearing, the trial court made the following comments in sentencing the Appellant:

Now what's going to have to happen to him if he messes up, I'm going to bring him back in and resentence him and he is going to run these two sentences consecutive to one another and I'm going to run consecutive to whatever he's got in Rutherford County, which is going to give him a minimum of five years to serve. And by that time I imagine Judge Burns up in Crossville will have given him about five years. So he will have about ten years if he messes up on my program. And I'll make him serve every day of it. And that's just all there is to it.

I'll sentence him to two years Community Corrections. One of the conditions is he attend intensive out-patient treatment program. And if he messes up, General Hamm, you can make a note that I've told him, I'm going to run them consecutive. He already qualifies for consecutive[,] . . . but I'll bring him back in and run them all consecutive if he messes up.

When a trial court chooses to re-sentence a defendant to a sentence more severe than the original, the trial court must conduct a sentencing hearing pursuant to the principles of the Sentencing Reform Act. *State v. Crook*, 2 S.W.238, 240 (Tenn. Crim. App. 1998); *Ervin*, 939 S.W.2d at 583; *State v. Keith F. Batts*, No. 01C01-9210-CR-00326 (Tenn. Crim. App. at Nashville, Feb. 18, 1993); *State v. Timothy Lemont Wade*, No. 01C01-9303-CR-00092 (Tenn. Crim. App. at Nashville, Nov. 24, 1993). It is mandatory for the trial court to state on the record the reasons for imposing a new sentence. *State v. Gauldin*, 737 S.W.2d 795, 798 (Tenn. Crim. App. 1987). The Sentencing Reform Act provides that the record of the sentencing hearing "shall include specific findings of fact upon which application of the sentencing principles was based." Tenn. Code Ann. § 40-35-209(c) (2003); *see also* Tenn. Code Ann. § 40-35-210(f) (2003).

When an appellant complains of his sentence on appeal, this court conducts a *de novo* review coupled with a presumption that the trial court's sentencing determinations are correct. Tenn. Code Ann. § 40-35-401(d) (2003); *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991). However, this presumption is conditioned upon an affirmative showing that the trial court considered the relevant sentencing principles and all pertinent facts and circumstances. *Ashby*, 823 S.W.2d at 169. Regardless of whether the presumption of correctness is applied, the burden of showing the impropriety of the sentence is on the appealing party. Tenn. Code Ann. § 40-35-401, Sentencing Commission Comments.

Before consecutive sentences can be imposed, the trial court must determine that one or more of the statutorily enumerated criteria of Tennessee Code Annotated § 40-35-115 exists. This section permits the imposition of consecutive sentences if the trial court finds that (1) the defendant is an offender whose record of criminal activity is extensive or (2) the offense for which the defendant is being sentenced was committed while on probation. Tenn. Code Ann. § 40-35-115(b)(2), (6) (2003). Although the trial court did not explicitly announce that it found that these two statutory factors applied, the court did comment in some detail on both the Appellant's criminal history and his probationary status in making its sentencing pronouncement. *See State v. Bobby R. Dyer*, No. M2002-03140-CCA-R3-CD (Tenn. Crim. App. at Nashville, May 14, 2004). The pre-sentence report reflects that, in addition to the present offenses, the Appellant's criminal history since his eighteenth birthday on May 11, 2001, includes convictions for evading arrest, misdemeanor theft, driving on a revoked license, two counts of underage consumption, and two counts of possession of drugs. All of these convictions resulted in suspended sentences, and the Appellant was on probation at the time he committed the present offenses. The Appellant's flagrant abuse of his judicially granted liberty is indefensible. The primary goal of non-institutional punishment is to provide a period of grace in order to assist the rehabilitation of a penitent offender. *Burns v. United States*, 287 U.S. 216, 220, 53 S. Ct. 154, 155 (1932).

The Appellant is eligible for consecutive sentencing based upon his extensive criminal history and his commission of the present offenses while on probation. The record supports the existence of these factors, and considered with the facts and circumstances of the case, the factors amply support imposition of consecutive sentencing. *See Bobby R. Dyer*, No. M2002-03140-CCA-

R3-CD; *see also State v. Stella Rodifier*, No. E2001-00034-CCA-R3-CD (Tenn. Crim. App. at Knoxville, Aug. 23, 2001).

## CONCLUSION

Based upon the foregoing, we conclude that the trial court did not abuse its discretion in ordering revocation of the Appellant's community corrections sentences and re-sentencing him to consecutive terms.   The judgment of the Davidson County Criminal Court is affirmed.

_____
DAVID G. HAYES, JUDGE