IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs October 26, 2005

## RICHARD L. HOWELL, JR. v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2000-B-718   Cheryl Blackburn, Judge**

_____

**No. M2004-02827-CCA-R3-PC - Filed January 31, 2006**

_____

Petitioner, Richard Howell, appeals the dismissal of his petition for post-conviction relief which alleged that his trial counsel rendered ineffective assistance of counsel.  Specifically, Petitioner contends that trial counsel's assistance was ineffective for failure to object to the admission of certain evidence at trial.  After a thorough review of the record, we conclude that Petitioner has failed to show that he was prejudiced by any deficiencies in his trial counsel's performance and affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR. and ROBERT W. WEDEMEYER, JJ., joined.

Adrian Chick, Nashville, Tennessee, for the appellant, Richard L. Howell, Jr.

Paul G. Summers, Attorney General and Reporter; Brent C. Cherry, Assistant Attorney General; Victor S. (Torry) Johnson III, District Attorney General; Roger Moore, Assistant District Attorney General; and Bret Gunn, Assistant District Attorney General, for the appellee, the State of Tennessee.

**OPINION**

**I.  Background**

Following a jury trial, Petitioner was convicted of one count of possession of over seventy pounds of a controlled substance with intent to sell, and one count of conspiracy to possess over three hundred pounds of a controlled substance with intent to sell.  The trial court sentenced Petitioner to concurrent sentences of ten years for the felony possession conviction and twenty-three years for the conspiracy conviction.  The facts surrounding Petitioner's convictions were summarized by this Court in the direct appeal as follows:

Acting on a tip from an informant, Detective Jesse Burchwell and other members of the Nashville Metropolitan Police Department's Vice Division arrived at James Snider's duplex residence on Riverside Drive. They told Mr. Snider that they had been informed that drugs were being sold out of his residence and asked for permission to search the premises. Mr. Snider gave his consent to the search and led the officers to the other side of the duplex which was vacant. In a bedroom closet, Mr. Snider showed the officers a black garbage bag containing 122.4 pounds of marijuana individually packaged in one-pound bags. Another one-pound bag sat on the closet's top shelf. Mr. Snider then led the police back to his bedroom in the other side of the duplex where he had $10,000 cash in the pocket of his coat.

At that point, Detective Burchwell asked Mr. Snider to call his source and arrange for the money to be collected. While the officers were preparing for the anticipated visit, however, Defendant called Mr. Snider and asked when the money would be ready. Mr. Snider stalled, telling Defendant that he would call him back. In the meantime, the residence was wired with a transmitting device. Once the cash was photocopied and returned, Detective Burchwell placed the money in an unsealed orange juice carton he found at the residence. At Detective Burchwell's direction, Mr. Snider then telephoned Defendant and told him to come pick up the money. Detective Burchwell remained with Mr. Snider in an undercover capacity.

Shortly thereafter, Defendant and Mr. Manzo-Benitez knocked on the back door of the residence. Mr. Snider let the two men in and led them through the kitchen into the living room where Detective Burchwell sat. Mr. Snider greeted Defendant and they discussed some information contained on a piece of paper Defendant had brought with him. Defendant said, "He said that this is what you gave him, 65." Mr. Snider agreed that "it was 65." Mr. Snider said that he would argue with "him," and Defendant replied that he had seen Mr. Snider "count it." Mr. Snider later testified that the person referred to in this exchange was co-Defendant, Mr. Vasquez-Aguirre, and the discussion concerned the money Mr. Snider had given Defendant and Mr. Vasquez-Aguirre the day before the search. At the conclusion of this conversation, Mr. Snider handed Defendant the orange juice carton with the money. Defendant looked into the box, and then he and Mr. Manzo-Benitez left the residence.

Defendant drove away from the duplex in a blue Chevrolet pick-up truck. Officers waiting outside the duplex followed Defendant to a second residence on Stirton Road which Sergeant Randy Brock already had under surveillance. Defendant drove down the driveway to a parking pad located behind the house. Defendant, Mr. Manzo-Benitez, and Mr. Vasquez-Aguirre got out of the truck and entered the residence through the back door. When Detective Burchwell arrived at the scene, officers approached the front door and knocked with the intention of obtaining consent to search the premises. As Detective Burchwell walked up the driveway toward the front door, he observed two of the residents throw an object into the kitchen.

Sergeant Brock also paused by a window on his way to the front door and heard someone inside the house say, "It is the police." He, too, saw one of the men, whom he later identified as Mr. Vasquez-Aguirre, throw something away. Sergeant Brock yelled out a warning, and the officers kicked the front door open.

Once inside, the officers conducted a "protective sweep" of the premises. Mr. Vasquez-Aguirre and Mr. Manzo-Benitez were in the living room, and Defendant was lying down on a mattress in the back bedroom. After the initial search was completed, Detective Burchwell left to obtain a search warrant while the other officers stayed with Defendant, Mr. Vasquez-Aguirre and Mr. Manzo-Benitez.

During the subsequent search of the residence at Stirton Drive, Detective Burchwell discovered $10,000 in cash behind the refrigerator. The officers also discovered several empty orange juice cartons, similar to the one used by Mr. Snider to transport the $10,000. With the assistance of a K-9 unit, the officers discovered three bundles of duct-taped money of $15,000, $25,000 and $50,000 in a bedroom closet along with several loose bills. In all, the officers recovered $109,923. The narcotic detection dog also alerted, or caught the scent, of narcotics in the area behind the cab of the blue Chevrolet pick-up truck parked behind the house, but no narcotics were present.

Detective Burchwell discovered several papers at the Stirton Road residence, including "numerous amounts of documents with rather large numbers on them, some of which were determined to be drug ledgers." Based on Detective Burchwell's experience, these documents were consistent with the drug operations described by Mr. Snider. Detective Burchwell testified that one of the pieces of paper appeared to reflect various payments, with the last recorded payment in the amount of $64,500. This figure, he said, was consistent with the $65,000 discussed by Mr. Snider and Defendant at the Riverside Drive residence. The officers also discovered sales receipts in Mr. Vasquez-Aguirre's name for the purchase of a truck, tires and a refrigerator. Mr. Vasquez-Aguirre's wallet contained Mr. Snider's telephone number. In addition, the documents included telephone bills addressed to Defendant at the Stirton Road address dated July 6, 1999, and July 12, 1999, and a receipt issued to Defendant from Haddox Pharmacy on July 21, 1999, reflecting a cash payment to Bell South Telephone for a telephone number assigned to Stirton Road.

At trial, Mr. Snider testified that he previously worked for "Hector" Vasquez-Aguirre, but after Hector was incarcerated, Hector introduced Mr. Snider to his brother, Manuel Vasquez-Aguirre, by telephone. During July, immediately prior to his arrest, Mr. Snider said that he received four shipments of marijuana totaling five hundred pounds. Mr. Snider testified that he believed Defendant and Mr. Vasquez-Aguirre made the first delivery, and Defendant and some other person made the second one. Defendant delivered the last shipment of 200 pounds either the night

before the search or early that morning. Mr. Snider stated that the 122.4 pounds of marijuana discovered at his residence on July 22, was the remaining portion of Defendant's last delivery.

According to Mr. Snider, the marijuana was delivered to him in one-pound bags, ten packages to a garbage bag. Mr. Snider explained, "Basically, [Mr. Vasquez-Aguirre and Defendant] brought me the marijuana, and I kept it there and other people took it and distributed it and I got the money and gave the money back to them." The price for the marijuana was set by Mr. Vasquez-Aguirre and Defendant, but basically Mr. Vasquez-Aguirre. Mr. Snider continued, "[The marijuana] was sold at a higher price and it was divided with whoever sold the marijuana. I usually kept approximately $25.00 a pound, somewhere in that neighborhood." While the marijuana was in Mr. Snider's house, the sales proceeds from each day's sales were picked up that night.

Prior to his arrest, Mr. Snider said that he had seen Defendant approximately fifteen or twenty times, five of those occasions in Mr. Snider's home. Although Mr. Vasquez-Aguirre didn't speak English, Defendant or someone else who spoke English was usually present when Mr. Snider met with Mr. Vasquez-Aguirre. Mr. Snider acknowledged that he received a lot of mail at Riverside Drive addressed to other people. In addition, although he never paid the bills, Mr. Snider said that he obtained a telephone number in his name for the Stirton Road residence on behalf of Mr. Hector Vasquez-Aguirre. A second telephone number, 244-1654, assigned to the Stirton Road address was in Defendant's name according to telephone records for the bill period ending July 11, 1999. On July 21, 1999, Defendant paid $631.04 toward that bill. A second undated receipt issued by Bell South Telephone Company reflects a payment of $2,000 by Defendant as a deposit on telephone service for Stirton Road.

At trial, Sergeant Brock testified that Detective Burchwell sent him and another officer to Stirton Road to conduct surveillance while the search at Riverside Drive was in progress. Around 5:00 or 5:30 that afternoon, a blue Chevrolet pick-up truck with dual back wheels left the Stirton Road residence driven by a white male. The pick-up truck returned at approximately 8:00 or 8:30 p.m., pulled down the Stirton Road residence's driveway and picked up some other people. As the truck pulled out again, Sergeant Brock and several other units in unmarked police cars followed the truck to Riverside Drive. On the return trip, the truck traveled a different route, and Sergeant Brock left the surveillance and proceeded to the Stirton Road residence. From his post across the street, Sergeant Brock observed the pick-up truck arrive and pull down the driveway. Three men got out, and he identified the Defendant as the driver he had seen earlier in the afternoon.

*State v. Richard L. Howell, Jr.*, No. M2001-00351-CCA-R3-CD, 2003 WL 213779, *1-3 (Tenn. Crim. App., at Nashville, Jan. 31, 2003).

## II. Post-Conviction Hearing

Petitioner's trial counsel testified that she did not believe that Petitioner had "much of a defense" to the charged offenses other than to challenge the State's evidence concerning Petitioner's relationship with his co-defendants as alleged in the conspiracy charge. Counsel said she could not remember whether Petitioner had told her that he was involved with his co-defendants in legitimate business transactions, or that he asked her to call any specific witnesses. Counsel said that the State's witnesses included primarily police officers and Petitioner's co-defendants.

Counsel stated that she reviewed the audio tape of the arranged exchange of money between Mr. Snider and Petitioner, including Detective Burchwell's narrative of the transaction at the beginning of the tape. Counsel could not recollect if she reviewed the audio tape with Petitioner, but she believed he had a good understanding of what was on the tape. Counsel did not remember objecting to any portion of the tape. Counsel said that portions of the audio tape were difficult to understand, and the jury was provided with a transcript. The trial court instructed the jury that the transcript was not evidence.

On cross-examination, counsel stated that she had been an attorney for approximately eleven years, and that, at the time of Petitioner's trial, between sixty to seventy percent of her practice involved criminal defense work. Counsel said that she tried to secure an offer of settlement from the State at Petitioner's request, but the State would only negotiate if all of the defendants agreed to enter pleas of guilty. Counsel felt that she had sufficient time to prepare for trial.

Petitioner testified that he only met briefly with his counsel before his court appearances. Petitioner stated that he told his counsel that he had been involved in several legitimate business transactions with Mr. Aguirre-Vasquez, including the sale of motor vehicles, which involved the transfer of large sums of money. Petitioner wanted to show that he was "duped" into participating in the drug transaction on Riverside Drive. Petitioner said that he gave counsel the names of some of the people involved in these legitimate transaction, but counsel did not contact any of his witnesses.

On cross-examination, Petitioner said that he believed that he should have testified at trial. He stated that he would have testified that he went to Riverside Drive to obtain the title to a car in exchange for the cash. Petitioner conceded, however, that he did not receive a car title that night, but he did take possession of the cash. Petitioner said that he asked his post-conviction counsel to subpoena his witnesses to testify at the evidentiary hearing, but that his post-conviction counsel did not do so.

The post-conviction court found that even if the narrative portion of the audio tape of the drug transaction on Riverside Drive had been redacted, Petitioner had failed to show he was prejudiced by his counsel's failure to object to that portion of the tape. The post-conviction court found that the trial court instructed the jury that only the conversational part of the tape was evidence. Further, Detective Burchwell testified as to the environment in which the transaction took

place, and Mr. Snider testified about the substance of the transaction reflected on the tape. The post-conviction court found that Petitioner had failed to support his claims of ineffective assistance of counsel and failed to show that he was prejudiced by any alleged deficiencies in his counsel's representation.

## III. Ineffective Assistance of Counsel

A petitioner seeking post-conviction relief must establish his allegations by clear and convincing evidence. Tenn. Code Ann. § 40-30-210(f)(1997). However, the trial court's application of the law to the facts is reviewed *de novo*, without a presumption of correctness. *Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001). A claim that counsel rendered ineffective assistance is a mixed question of fact and law and therefore also subject to de novo review. *Id.*; *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999).

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, he must establish that counsel's performance fell below "the range of competence demanded of attorneys in criminal cases." *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). In addition, he must show that counsel's ineffective performance actually adversely impacted his defense. *Strickland v. Washington*, 466 U.S. 668, 693, 104 S. Ct. 2052, 2067, 80 L. Ed. 2d 674 (1984). In reviewing counsel's performance, the distortions of hindsight must be avoided, and this Court will not second-guess counsel's decisions regarding trial strategies and tactics. *Hellard v. State,* 629 S.W.2d 4, 9 (Tenn. 1982). The reviewing court, therefore, should not conclude that a particular act or omission by counsel is unreasonable merely because the strategy was unsuccessful. *Strickland,* 466 U.S. at 689, 104 S. Ct. at 2065. Rather, counsel's alleged errors should be judged from counsel's perspective at the point of time they were made in light of all the facts and circumstances at that time. *Id*. at 690, 104 S. Ct. at 2066.

A petitioner must satisfy both prongs of the *Strickland* test before he or she may prevail on a claim of ineffective assistance of counsel. *See Henley v. State,* 960 S.W.2d 572, 580 (Tenn. 1997). That is, a petitioner must not only show that his counsel's performance fell below acceptable standards, but that such performance was prejudicial to the petitioner. *Id.* Failure to satisfy either prong will result in the denial of relief. *Id.* Accordingly, this Court need not address one of the components if the petitioner fails to establish the other. *Strickland*, 466 U.S. at 697, 104 S. Ct. at 2069.

Petitioner argues that his counsel's assistance was ineffective because she failed to object to Detective Burchwell's narrative portion of the audiotape which was introduced as an exhibit at trial during Mr. Snider's direct examination. Before the introduction of the tape, Mr. Snider testified as to the sequence of events leading up to Petitioner's arrival at his house. Mr. Snider stated he called Petitioner and asked Petitioner to come to his house to pick up some money. Mr. Snider stated that he had received the money from the sale of a portion of the marijuana delivered by Petitioner to Mr. Snider on July 21, 1999, or during the early morning hours of July 22, 1999. Mr. Snider said that Petitioner arrived shortly thereafter in response to Mr. Snider's telephone call, and Mr. Snider gave

Petitioner $10,000. Mr. Snider said that the police officers placed a recording device in Mr. Snider's home prior to Petitioner's arrival.

Prior to the introduction of the audiotape, the trial court instructed the jury:

> Ladies and gentlemen of the jury, I need to advise you that you are now being provided a transcript or what is purported to be a transcript. The tape is the actual evidence so the transcript has been prepared to assist you in listening to the tape; however, if you were to find there to be any discrepancies between the tape and the transcript, you are to rely on the tape. That is the actual evidence, but the transcript is just an assist to you.

The tape opened with the following narrative by Detective Burchwell:

> BURCHWELL: July 22, 1999, approximately 7:55 p.m. I'm with the cooperating individual at 817 Riverside Drive where we're waitin' for a gentleman he knows as Rick and a gentleman by the last name of Vasqeuz to come here and pick up $10,000 cash for marijuana that they fronted the cooperating individual . . .

After the tape was played to the jury, the trial court gave the following instruction:

> All right, General, before you continue, ladies and gentlemen, the transcripts and the tape contain statements made by Detective Burchwell and Mr. Snider. These statements are not admitted for the truth of the matter asserted by Detective Burchwell and Mr. Snider. These are statements admissible only as they provide meaning to the statements made by the individual identified as the defendant . . . . Only the statements made by the person you identify as the defendant . . . may be considered by you on the question of whether the defendant or defendants are guilty of any offense.

Petitioner argues that Detective Burchwell's statements were inadmissible hearsay, or, if admissible, that the probative value of the statements was outweighed by the danger of unfair prejudice.

Hearsay evidence is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted" and is not admissible except as provided in the Tennessee Rules of Evidence or by law. Tenn. R. Evid. 801(c); 802. Generally, a police officer's background or explanatory observations contained within a videotape or audiotape prepared in connection with a criminal prosecution are hearsay and not admissible. *State v. Van Tran,* 864 S.W.2d 465, 477 (Tenn. 1993). "[M]atters observed by police

officers and other law enforcement personnel" are specifically excluded from the public records and reports exception to the hearsay rule. Tenn. R. Evid. 803(8). In *Van Tran*, the trial court admitted into evidence a videotape of the crime scene which contained a voice over narration of the investigating officer's observations of the scene. *Van Tran*, 864 S.W.2d at 477. Although our Supreme Court concluded that the visual portion of the audiotape was admissible, the trial court erred in allowing the jury to hear the investigating officer's narration. The Court cautioned that "[t]he better practice would have been for the trial court to have turned off the volume and had [the police officer] narrate the tape from the stand." *Id*.; *see also State v. Michael Carlton Bailey*, No. 01C01-9403-CC-00105, 1995 WL 424996, at *9 (Tenn. Crim. App., at Nashville, July 20, 1995), *perm. to appeal denied* (Tenn. Jan. 8, 1996) (Finding that a narration of a videotape "is in the nature of an officer's written investigative report and as such is generally not admissible"). The *Van Tran* Court, however, found that the admission of the narration was harmless error because the investigating officer's statements contained "facts established by proper evidence elsewhere in the record and because of the clear evidence of the Defendant's guilt as established by the other evidence." *Van Tran*, 864 S.W.2d at 477.

The trial court instructed the jury that Detective Burchwell's comments at the beginning of the audiotape were not offered for the truth of the matter asserted in the comments. A statement which is not hearsay because it is not offered for the truth of the matter asserted, however, must still satisfy the general admissibility requirements such as relevance and probative value. *See State v. Land*, 34 S.W.3d 516, 526 n.6 (Tenn. 2000); *State v. Howell*, 868 S.W.2d 238, 252 (Tenn. 1993) (a statement not offered to prove the truth of the matter asserted, but for some other purpose, is not hearsay). Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tenn. R. Evid. 401. The trial court stated that the purpose of admitting Detective Burchwell's narration into evidence was to "provide meaning to the statements" made by Petitioner during the taped conversation.

Petitioner argues that Detective Burchwell's comments on the audiotape only provide meaning to the ensuing conversation if accepted as true. We note that the audio portion reflecting Mr. Snider's and Petitioner's conversation does not identify Petitioner by name, nor does this portion of the tape reveal that the underlying purpose for the exchange of money was the sale of marijuana. We also note that the transcript of the taped conversation identifies Petitioner by name as the second voice, presumably on the basis of Detective Burchwell's introductory remarks.

Be that as it may, based on our review of the entire record, we find that the evidence does not preponderate against the trial court's finding that Petitioner failed to establish that he was prejudiced by his counsel's failure to object to the narration portion of the audiotape. Detective Burchwell testified that Mr. Snider agreed to assist the police officers in their investigation after the search of Mr. Snider's home revealed the presence of marijuana and money. Detective Burchwell stated that he remained with Mr. Snider during Petitioner's visit, and Petitioner's voice was the second voice on the tape. Police officers followed Petitioner to and from Mr. Snider's house. Mr. Snider testified prior to the introduction of the tape that Petitioner made three deliveries of marijuana to his house

in the days immediately preceding the taped conversation, that he called Petitioner on July 22, 1999, to come to his house and pick up the money which was received from the sale of a portion of Petitioner's last delivery of marijuana, and that the audiotape accurately reflected the conversation which occurred during the exchange. Based on the foregoing and our review of the record, we conclude that Petitioner is not entitled to relief on this issue.

## CONCLUSION

After a thorough review of the record, we affirm the judgment of the post-conviction court.

_____
THOMAS T. WOODALL, JUDGE