IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
January 19, 2012 Session

## STATE OF TENNESSEE v. GARY RANDALL MOSER

**Appeal from the Criminal Court for Putnam County**
**No. 09-0866   David Patterson, Judge**

---

**No.  M2011-01017-CCA-R3-CD - Filed December 4, 2012**

---

The Putnam County Grand Jury indicted Appellant, Gary Randall Moser, for two counts of aggravated kidnapping and one count of aggravated assault resulting from an altercation with his girlfriend.  Following a jury trial, Appellant was convicted of two lesser included offenses of false imprisonment.  These offenses were merged into one count, and the trial court sentenced Appellant to 319 days in the county jail.  Appellant appeals his conviction based upon his arguments that the trial court erred in admitting hearsay testimony alleging it violated Appellant's right under the Confrontation Clauses of both the Tennessee and United States Constitutions.  Appellant also contends that the evidence was insufficient to support his conviction.  We have determined the statement in question was nontestimonial and properly admitted under the excited utterance exception to the hearsay rule and, therefore, there is no error in its admission.  We have also determined that the evidence was sufficient to support Appellant's conviction.  Therefore, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and CAMILLE R. MCMULLEN, JJ., joined.

David N. Brady, District Public Defender; and E. J. Mackie, Assistant Public Defender, Cookeville, Tennessee, for the appellant, Gary Randall Moser.

Robert E. Cooper, Jr., Attorney General and Reporter; Rachel West Harmon, Assistant Attorney General; William E. Gibson, District Attorney General; and Anthony Craighead, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

## *Factual Background*

The victim and Appellant met on the internet. The victim lived in Mississippi and Appellant lived in Tennessee. For six months, they interacted through the internet. After conversing this way, they decided to meet in person. The relationship grew and the couple would alternate spending a week or so at each other's residence. This went on for about a year.

On August 11, 2009, Officer Donna Revis, with the Cookeville Police Department, was flagged down by a woman sitting in a white car parked near a plumbing supply business. The woman in the car was the victim. Officer Revis noticed that the victim was visibly shaking and that she kept checking the rearview mirror in the car. The victim asked Officer Revis what day it was. When Officer Revis replied that it was Tuesday, the victim exclaimed that her boyfriend had been holding her against her will since Sunday. The victim had multiple injuries that were visible to Officer Revis, including a large knot on the left side of her head, bruising on the right side of her face, a black eye, and bruising on both her hands and arms. Officer Revis asked the victim if she wanted an ambulance called. The victim refused stating that she did not want her boyfriend, the Appellant, to drive by and see her talking to Officer Revis. Officer Revis eventually convinced the victim to go to the hospital. The victim followed Officer Revis in her own car to the hospital.

Officer Revis was at the hospital with the victim. In the examination room, Officer Revis had to help the victim remove her shirt because the victim was physically unable to do so. When the victim removed her shirt, Officer Revis saw that the victim was covered with bruises, cuts and scrapes. The victim also had a carpet burn on her back and her thighs.

Detective Yvette Demming, with the Cookeville Police Department, met Officer Revis and the victim at the hospital. Both Officer Revis and Detective Demming stated that they did not notice any signs that the victim had been drinking. As a result of the victim's description of events, Detective Demming arrested Appellant. Appellant waived his Miranda rights and told Detective Demming his version of events from Sunday to Tuesday.

According to Appellant, the victim came to his house to spend several days with him. He said that she began drinking and continued drinking for three days straight. On Sunday, he refused to let her leave because he was afraid she would hurt herself. He restrained her by grabbing her around the waist five or six times and grabbing her by the wrists. He admitted that he dragged the victim by her ankles down the hallway to the bedroom to keep her safe. Appellant stated that she was very drunk, fell twice, and urinated in his bed. He

stated that the victim did not eat or drink anything from Sunday to Tuesday. The victim also kicked out his bedroom window. Detective Demming arrested Appellant at this house. She noticed that the bedroom window had been broken and that the bedroom smelled of urine.

On August 9, 2009, the Putnam County Grand Jury indicted Appellant for two counts of aggravated kidnapping and one count of aggravated assault. A jury convicted Appellant of the lesser included offense of false imprisonment on the first two counts. These were merged into one conviction. The jury acquitted Appellant of the aggravated assault charge. The trial court sentenced Appellant to 319 days in the county jail.

## ANALYSIS

### Hearsay Testimony

Appellant argues that the trial court erred in allowing Officer Revis's statement that the victim told her that Appellant had been holding her since Sunday. Appellant argues that the introduction of this statement violates his right under both the United States and Tennessee Constitutions to confront witnesses against him. The State argues that the trial court did not err in ruling that the statement could come in under the excited utterance exception to the hearsay rule.

The Confrontation Clause prohibits the admission of testimonial hearsay unless the witness "was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." *Crawford v. Washington*, 541 U.S. 36, 54, (2004). The Confrontation Clause applies only to testimonial statements. *Davis v. Washington*, 547 U.S. 813, 823 (2006); *State v. Franklin*, 308 S.W.3d 799, 810 (Tenn. 2010). Our supreme court has stated, "in the courts of this state, the admissibility of a nontestimonial hearsay statement is governed by the Tennessee Rules of Evidence." *Franklin*, 308 S.W.3d at 810.

A testimonial statement "is typically '[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact.'" *Crawford*, 541 U.S. at 51 (quoting 2 N. Webster, An American Dictionary of the English Language (1828). Testimonial statements include "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.'" *Id.* (quoting Brief for National Association of Criminal Defense Lawyers, et. al. as *Amicus Curie* 3).

Our first determination in the case at hand is whether the statement under consideration was actually hearsay. *See Franklin*, 308 S.W.3d at 810. Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing,

offered in evidence to prove the truth of the matter asserted." Tenn. R. Evid. 801(c). There is no question that the victim's statement to Officer Revis that her boyfriend had been holding her captive since last Sunday was offered to prove that Appellant was indeed holding the victim captive.

We now turn to whether the statement was testimonial or nontestimonial. In *Davis v. Washington*, 547 U.S. 813 (2006), the United States Supreme Court stated the following:

> Without attempting to produce an exhaustive classification of all conceivable statements – or even all conceivable statements in response to police interrogation – as either testimonial or nontestimonial, it suffices to decide the present cases to hold as follows: Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.

547 U.S. at 822.

*Davis* and its companion case, *Hammon v. Indiana*, both involved situations where in *Davis*, a 911 operator, and in *Hammon*, police officers, were responding to complaints of domestic violence. In *Davis*, the 911 operator asked what was happening, and the victim responded that the defendant had jumped her. The 911 operator then asked a series of questions regarding the specifics of the situation, such as whether there were weapons and the identity of her assailant including his middle initial. *Id.* at 817-18. The Supreme Court held that the exchange was nontestimonial because "the circumstances of [the victim's] interrogation objectively indicate its primary purpose was to enable police assistance to meet an ongoing emergency." *Id.* at 828.

In *Hammon*, officers responded to a domestic disturbance call. They found the victim on the front porch. *Id.* at 819. She told them they could enter the house and they found evidence of an altercation. The defendant was also in the house and admitted to an argument with the victim but stated that everything was fine. *Id.* The officers took the victim into one room and the defendant into another room and questioned both of them about what had occurred. *Id.* The Court held that the victim's statements in *Hammon* were testimonial

-4-

because it was "clear from the circumstances that the interrogation was part of an investigation into possibly criminal past conduct." *Id.* at 829.

The Supreme Court revisited this issue in *Michigan v. Bryant*, 131 S. Ct. 1143 (2011). In *Bryant*, officers responded to a call that a man had been shot. *Bryant*, 131 S. Ct. at 1150. They were dispatched to a gas station where they found the victim lying in the parking lot with a gunshot wound. The officers asked the victim what had happened and who had shot him. *Id.* These statements were allowed in as evidence at the trial. The Court reviewed its prior holdings from *Crawford* and *Davis* and stated that "the existence *vel non* of an ongoing emergency is not the touchstone of the testimonial inquiry; rather, the ultimate inquiry is whether the 'primary purpose of the interrogation [was] to enable police assistance to meet [the] ongoing emergency.'" *Id.* at 1165 (quoting *Davis*, 547 U.S. at 822.

Before the jury-out hearing, Officer Revis testified that she was sitting in her car in a business parking lot filling out an accident report. The victim drove into the parking lot and waved for Officer Revis to come over to the victim's car. When she approached the car, Officer Revis said that the victim was "kind of hesitant and didn't say anything at first." The officer also noticed that the victim had a knot on her head and that the victim was "visibly shaken and . . . she would not make eye contact." During the jury-out hearing to determine whether the statement in question could be entered into evidence, Officer Revis testified to the following exchange with the victim:

[State] Q.     Officer Revis, you had a conversation with [the victim] on that morning, were you able to determine the proximity of the events? What I mean by that is were you able to determine how long it was since she had escaped the confines of [Appellant's] home?

A.     My understanding is she had just left. She had just gotten free.

Q.     Okay.
And again, and I don't mean to belabor the point, but her behavior and her appearance and the way she was acting on that morning, how was that?

A.     She appeared shaken. She was, from my experience as being an officer for fifteen years that she appeared that she was scared, she was shaking. Like I said, she kept looking in her mirror like as if she was looking for someone. She was, to me she appeared visibly upset. She wasn't, you know, crying uncontrollably or anything.

Q.    What did she tell you?

A.    She stated that her boyfriend had been holding her against her will since Sunday.

        . . . .

Q.    She had, in your report you stated that her eyes were, I think her left eye was black and blue, but her right eye was turning that direction?

A.    Yes, once she turned and looked at me, I could see more, she had the black and blue on this.  But then her other eye also appeared to be turning black and blue.  And at this time I had started looking at her and you could see her hands, arms, [everywhere] skin was exposed was just bruising, all the way from the tips of her fingers up as far up her arms as I could see.

Q.    Did she have any trouble breathing?

A.    She told me she was having trouble breathing and that she felt that she possibly had maybe a broken rib or something.

Q.    Okay.
        And again, I don't mean to go back, but you said she kept looking in her rear view mirror, were you able to determine why she was looking in the rear view mirror?

A.    Once she made the statement that she had been [. . .] held by her, by her boyfriend, it was, to me it was she was looking for him to come, to show up at that scene.  And she was, she told me she was afraid he was going to drive by and see her talking to me.

        . . . .

[Defense counsel] Q.        So we have no way of knowing whether this happened, her statements to you happened within twenty four hours of leaving [Appellant's] house and the alleged trauma, would you agree with that?

A.    Well she didn't know what day it was whenever she was there.  She had asked me what day is this and, which caught me off guard.  That wasn't a question I was expecting and –

Q.     I understand that.

A.     – . . . I told her it was Tuesday and she said, oh, my God, he's been holding me since Sunday.  So it led me to believe that she had just gotten away

We conclude that this exchange between Officer Revis and the victim constituted an on-going emergency under *Davis* and *Bryant*.  The victim waved Officer Revis over to her car.  When Officer Revis approached, she noticed that the victim was visibly shaking and was bruised from head to toe.  In addition, the victim kept checking her rearview mirror as if she was afraid someone was going to see her speaking with the officer.  Shortly after this exchange, Officer Revis asked the victim if she wanted an ambulance called.

It is apparent that the primary purpose of Officer Revis's exchange with the victim was to enable the officer to meet the ongoing emergency and the victim's medical needs. From Officer Revis's testimony, it does not appear that there was an interrogation as to who, where, and when the alleged abuse occurred.  Rather, Officer Revis was responding to a citizen's request for aid.  Therefore, we conclude that the victim's Tuesday statement to Officer Revis that Appellant had been holding her since Sunday was nontestimonial.

Having determined that the statement in question was nontestimonial, we must now determine whether the statement was properly admitted under the excited utterance exception to the hearsay rule.  *State v. Parlar*, 350 S.W.3d 883, 900 (Tenn. 2011).  For a hearsay statement to be admissible, it must fall within the hearsay exceptions provided at Rule 803 of the Tennessee Rules of Evidence.

One of the long-recognized exceptions to the hearsay rule is the excited utterance exception found at Rule 803(2) of the Tennessee Rules of Evidence.  This exception applies to statements, "relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition."  Tenn. R. Evid. 803(2).  In *State v. Land*, 34 S.W.3d 516 (Tenn. Crim. App. 2000), this Court stated that "[t]he underlying theory of this exception is that circumstances may produce a condition of excitement which temporarily stills the capacity of reflection and produces utterances free of conscious fabrication."  34 S.W.3d at 528.  For a statement to fall within this exception, three criteria must be met: "(1) there must be a startling event or condition that causes the stress of excitement; (2) the statement must relate to the startling event or condition; and (3) the statement must be made while the declarant was under the stress of excitement."  *Id.* at 528-29 (citing Neil P. Cohen, et. al., Tennessee Law of Evidence § 803(2).2 at 533-34 (3d ed. 1995)).

The victim's statements meet the criteria for the excited utterance exception. The victim had recently escaped being held for two days against her will by Appellant. She was bruised from head to toe and visibly shaking and afraid. Officer Revis stated that during her exchange with the victim, the victim was continually checking the mirror apparently in fear that Appellant would see her talking to the officer. Clearly, this constitutes a startling event or condition that would cause the stress of excitement. The victim's statement in surprise and horror at learning on a Tuesday that Appellant had been holding her since the previous Sunday obviously relates to the startling event. The statement was clearly made while she was still under the influence of the event because she was visibly shaking and repeatedly checking her mirror in fear. Therefore, the trial court properly allowed the statement in under the excited utterance exception.

We determined above that the statements at issue qualify for the excited utterance exception to the general rule prohibiting hearsay. Accordingly, we conclude Appellant's confrontation rights under the Sixth Amendment, as well as, article I, section 9 of the Tennessee Constitution were not violated by the admission of the nontestimonial excited utterance of the victim. Appellant is not entitled to relief on this issue.

## Sufficiency of the Evidence

Appellant also argues that the evidence was insufficient to convict him of false imprisonment. The State disagrees.

To begin our analysis, we note that when a defendant challenges the sufficiency of the evidence, this Court is obliged to review that claim according to certain well-settled principles. A verdict of guilty, rendered by a jury and "approved by the trial judge, accredits the testimony of the" State's witnesses and resolves all conflicts in the testimony in favor of the State. *State v. Cazes*, 875 S.W.2d 253, 259 (Tenn. 1994); *State v. Harris*, 839 S.W.2d 54, 75 (Tenn. 1992). Thus, although the accused is originally deemed with a presumption of innocence, the verdict of guilty removes this presumption and replaces it with one of guilt. *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997); *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). Hence, on appeal, the burden of proof rests with the defendant to demonstrate the insufficiency of the convicting evidence. *BlandI,* 958 S.W.3d at 659; *Tuggle*, 639 S.W.2d at 914.

The relevant question the reviewing court must answer is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979). In making this decision, we are to accord the State "the strongest legitimate view of the

evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." *See Tuggle*, 639 S.W.2d at 914. As such, this Court is precluded from re-weighing or reconsidering the evidence when evaluating the convicting proof. *State v. Morgan*, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996); *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Moreover, we may not substitute our own "inferences for those drawn by the trier of fact from circumstantial evidence. In *Matthews*, 805 S.W.2d at 779. Further, questions concerning the credibility of the witnesses and the weight and value to be given to evidence, as well as all factual issues raised by such evidence, are resolved by the trier of fact and not the appellate courts. *State v. Pruett*, 788 S.W.2d 559, 561 (Tenn. 1990).

The guilt of a defendant, including any fact required to be proved, may be predicated upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. *See State v. Pendergrass*, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999). Even though convictions may be established by different forms of evidence, the standard of review for the sufficiency of that evidence is the same whether the conviction is based upon direct or circumstantial evidence. *See State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011). As such, all reasonable inferences from evidence are to be drawn in favor of the State. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978); *see Tuggle*, 639 S.W.2d at 914.

Appellant argues that "[t]he hearsay testimony by Officer Revis was the evidence presented to the jury that tied [Appellant] to the alleged victim's alleged injuries. Det Sgt Demming's testimony recounted [Appellant's] denial of causing injury to [the victim]." Given Appellant's conviction, this argument is irrelevant. Appellant has raised the issue of whether there was sufficient evidence to support his conviction for false imprisonment. "A person commits the offense of false imprisonment who knowingly removes or confines another unlawfully so as to interfere substantially with the other's liberty." T.C.A. § 39-13-302(a). False imprisonment does not require proof of injury to support a conviction, therefore, the argument regarding a lack of evidence concerning Appellant's responsibility for the victim's injuries is misplaced.

When taken in a light most favorable to the State, we conclude that the evidence is sufficient to support the conviction for false imprisonment. Appellant testified that he restrained the victim by grabbing her around the waist and wrists. He also admitted that he dragged her by her ankle down the hallway to his bedroom "for h er safety." Irrespective of his reasons for holding the victim against her will the jury obviously concluded Appellant had no legal right to restrain the victim. Appellant's own testimony coupled with Officer Revis's testimony, which we have previously determined was properly admitted, is more than sufficient to prove that Appellant unlawfully confined the victim and substantially interfered with her liberty.

Therefore, this issue is without merit.

## **CONCLUSION**

For the foregoing reasons, we affirm the judgment of the trial court.


_____
JERRY L. SMITH, JUDGE