IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs April 23, 2019

## STATE OF TENNESSEE v. DOMINIQUE ALEXANDER BOOKER

Appeal from the Criminal Court for Knox County
No. 108641, 109764    G. Scott Green, Judge

_____

### No. E2018-00777-CCA-R3-CD

_____

In 2017, the Defendant, Dominque Alexander Booker, pleaded guilty to three counts in two separate cases, and the trial court sentenced him to a probationary sentence. In 2018, the Defendant's probation officer filed a probation violation warrant alleging that the Defendant had violated his probation by committing assault and vandalism and by not notifying his probation officer of the new offenses. After an evidentiary hearing, the trial court revoked the Defendant's probation sentences for both cases. On appeal, the Defendant contends that the trial court erred when it admitted into evidence the police officer's recount of the victim's statements about the assault as an excited utterance over the Defendant's hearsay objection. After review, we affirm the trial court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed.**

ROBERT W. WEDEMEYER, J., delivered the opinion of the Court, in which THOMAS T. WOODALL, and ROBERT H. MONTGOMERY, JR., JJ., joined.

Cameron D. Bell, Knoxville, Tennessee, for the appellant Dominique Alexander Booker.

Herbert H. Slatery III, Attorney General and Reporter; Katharine K. Decker, Assistant Attorney General; Charme P. Allen, District Attorney General; and Ashley McDermott, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION
### I. Facts

This case arises from new arrests while the Defendant was serving a probation sentence. On August 3, 2016, a Knox County grand jury indicted the Defendant for two counts of attempted first-degree murder and two counts of employing a firearm during the commission of a dangerous felony. On January 27, 2017, the Defendant pleaded guilty to two counts of facilitation to commit attempted second degree murder. The trial

court entered the agreed concurrent sentence of four years, at 30%, to be served on state probation. The judgment of conviction states that the Defendant's probation was conditioned upon him not thereafter violating any laws and the Defendant's complying with the rules of probation.

In July 2017, the Defendant's probation officer filed a probation violation warrant stating that the Defendant had failed two drug screens for marijuana. The trial court therefore ordered enhanced supervision, in part, because the Defendant had a history of drug use. It also ordered that the Defendant complete a drug and alcohol rehabilitation program while in custody as a condition of being placed on enhanced probation.

On August 25, 2017, the Defendant pleaded guilty to intent to sell 0.5 grams or more of cocaine, and he received a ten-year probationary sentence, to run concurrently with his four-year probation sentence. On August 29, 2017, the trial court found the Defendant guilty of violating a law of the State of Tennessee based upon the cocaine conviction, and it ordered that the Defendant be placed on enhanced probation for three years and 143 days, to expire January 15, 2021.

On March 8, 2018, the trial court found that the Defendant had failed to comply with the conditions of his probation by engaging in criminal conduct, i.e. committing an assault and vandalism on March 6, 2018. The affidavit further alleged that the Defendant failed to contact his probation officer and report his arrest.

The trial court held an evidentiary hearing, during which the parties presented the following evidence: The State informed the trial court that it did not anticipate that the victim would appear in court but that it intended to present proof through the police officer who responded to the call about this incident. The State alleged that the Defendant had violated his probation by both committing criminal conduct and not reporting his arrest for committing criminal conduct. The Defendant's attorney objected to the officer's testimony arguing that the officer's testimony constituted hearsay, which violated even the lower hearsay standard of a probation revocation hearing.

Officer Matthew Janish, with the Knoxville Police Department, testified that he responded to a call on March 6, 2018, that involved a domestic assault between the victim and her boyfriend, the Defendant. When he arrived, he found the victim "extremely upset . . . crying . . . and a little fearful." The officer observed a large bruise on the victim's forehead that looked to be turning purple and blue. Officer Janish took two pictures of the bruise, both of which the trial court admitted into evidence.

The State asked about the conversation that occurred between the victim and the officer, and the Defendant objected on hearsay grounds. The trial court asked the officer

2

if the conversation occurred "right after" the incident with the Defendant, and the officer said that it had. The trial court ruled that the victim's statements were admissible pursuant to the excited utterance exception to the hearsay rule.

Officer Janish continued that the victim told him that the Defendant had come to her home the night before this incident and also the morning before the officer responded. The two argued over the Defendant's taking the victim's vehicle without permission, and the Defendant "headbutted" her in the forehead. The victim also showed the officer her shattered iPhone. She said that, after the Defendant "headbutted" her, he grabbed her phone, took it outside, and threw it down to the parking lot. The victim said that, when she went to retrieve the phone, the Defendant shoved her to the ground and kicked her in the leg.

During cross-examination, Officer Janish testified that the victim told him that the incident occurred "first thing in the morning." Officer Janish described the victim as "extremely upset and fearful that [the Defendant] was going to return." The officer was uncertain what time the victim called 911. The victim's young child was present in the home when the officer arrived.

Jacob White, an officer with the Tennessee Department of Correction, Enhanced Probation, testified that he supervised the Defendant. He testified that, upon entering supervision, the rules are explained clearly and carefully to each defendant. The Defendant began supervision through enhanced probation on September 26, 2017. The second condition of the Defendant's probation sentence stated: "I will report all arrests, including traffic violations, immediately regardless of the outcome to my probation officer." Mr. White testified that the Defendant never reported any arrests to him, including his arrest for domestic assault on March 6, 2018, or his arrest for vandalism on March 16, 2018.

During cross-examination, Officer White testified that the Defendant's most recent meeting with probation was earlier in the month of March. The Defendant met with another probation officer, Paula Bothof, who was transferring her cases to Mr. White. Mr. White said that he had not yet personally met with the Defendant because their first meeting had been scheduled for March 20, 2018, after the Defendant's arrest.

Officer White testified that Ms. Bothof told him that, a few weeks before the Defendant's arrest, the victim told Ms. Bothof that the Defendant had been out drinking and missed his curfew.

The defense called Ms. Bothof as a witness. Ms. Bothof testified that she supervised the Defendant while he was on enhanced probation. She said that the

3

Defendant did not fail any drug screens while under her supervision and attended classes as directed. She agreed that, overall, the Defendant had been a "very compliant probationer."

Ms. Bothof testified that a female called her and said that the Defendant had been out drinking past his curfew. Later, another female called her and stated that she had made up the allegations about the Defendant because she was upset with him.

During cross-examination, Ms. Bothof testified that she was not sure if the second female caller was the same as the first.

The Defendant testified that since he had been placed on enhanced probation, he had been working and passing drug screens. The Defendant said that the victim lied when she said he "headbutted" her, just as she had lied in the past. He said he could not prove that she was lying but that the fact that he had been "straight" for seven months should weigh in his favor.

The trial court stated:

> Well, then she's a very effective liar . . . because I believe that you assaulted her based on the testimony of the police officer.
>
> You've received significant breaks already. And you've had an attempted first degree murder, which is a class A felony, with a gun stack[ed] on top of that, that was pled down all the way to facilitation [of ] second degree murder, four years of probation.
>
> You had a school zone cocaine which was, once again, another A felony where you would've had to do one hundred percent of not less than 15 years with a gun stack on top of that. That was pled down to ten years of probation and these two cases to run together.
>
> I am confident that I told you back in August what I told you and the time's come. I mean, you assaulted her, this Court finds you assaulted her.

After a hearing, the trial court revoked the Defendant's probation and ordered that he serve the balance of his sentence in incarceration.

It is from this judgment that the Defendant now appeals.

## II. Analysis

On appeal, the Defendant contends that the trial court abused its discretion when it allowed Officer Janish to testify about the victim's hearsay statements because the State failed to establish and the trial court failed to make findings of a good cause and reliability. The State counters that the trial court, by its ruling, implicitly found that there was a good cause to justify the admission of the hearsay statements and that the statements were reliable. The State further posits that any error was harmless because there was other evidence to establish that the Defendant violated the terms of his probation.

The issue before this Court is whether the trial court erred when it revoked the Defendant's probation based upon the evidence presented at the revocation hearing. A trial court is granted broad authority to revoke a suspended sentence and to reinstate the original sentence if it finds by the preponderance of the evidence that the defendant has violated the terms of his or her probation and suspension of sentence. T.C.A. §§ 40-35-310, -311. The standard of review for questions related to probation or any other alternative sentence is "'an abuse of discretion standard of review, granting a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act.'" *State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012) (citing *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012). To show an abuse of discretion in a probation revocation case, "a defendant must demonstrate 'that the record contains no substantial evidence to support the conclusion of the trial judge that a violation of the conditions of probation has occurred.'" *State v. Wall*, 909 S.W.2d 8, 10 (Tenn. Crim. App. 1994) (quoting *State v. Delp*, 614 S.W.2d 395, 398 (Tenn. Crim. App. 1980)).

A defendant at a probation revocation proceeding is not entitled to the full array of procedural protections associated with a criminal trial. *See Black v. Romano,* 471 U.S. 606, 613 (1985); *Gagnon v. Scarpelli,* 411 U.S. 778, 786-90 (1973). However, such a defendant is entitled to the "minimum requirements of due process," including: (1) written notice of the claimed violation(s) of probation; (2) disclosure to the probationer of evidence against him or her; (3) the opportunity to be heard in person and to present witnesses and documentary evidence; (4) the right to confront and cross-examine adverse witnesses (unless good cause is shown for not allowing confrontation); (5) a neutral and detached hearing body, members of which need not be judicial officers or lawyers; and (6) a written statement by the fact-finder regarding the evidence relied upon and the reasons for revoking probation. *Gagnon*, 411 U.S. at 786; *Morrissey v. Brewer*, 408 U.S. 471, 489 (1972); *State v. Wade*, 863 S.W.2d 406, 408 (Tenn. 1993).

We first note that the trial court was within its discretion when it revoked the Defendant's probation solely on the basis that the Defendant failed to report his arrests to

his probation officer. The Defendant was being supervised by enhanced probation, having previously violated his probation, and he understood that the conditions of his release included reporting new arrests to his probation officer. He failed to do so. As such, considering our standard of review, this is a sufficient basis upon which we could affirm the trial court's judgment.

That said, the trial court, in its order revoking the Defendant's probation, stated that it accredited the police officer's testimony about the assault and that it believed that the Defendant had assaulted the victim, who did not testify against the Defendant. Accordingly, we will address whether the trial court erred when it admitted the police officer's testimony.

Generally, "[a]dmission of evidence is entrusted to the sound discretion of the trial court, and a trial court's ruling on evidence will be disturbed only upon a clear showing of abuse of discretion." *State v. Robinson*, 146 S.W.3d 469, 490 (Tenn. 2004). The Tennessee Rules of Evidence provide that all "relevant evidence is admissible," unless excluded by other evidentiary rules or applicable authority. Tenn. R. Evid. 402. Of course, "[e]vidence which is not relevant is not admissible." *Id.* Relevant evidence is defined as evidence "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tenn. R. Evid. 401. Even relevant evidence, however, "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Tenn. R. Evid. 403. Evidence which qualifies as "hearsay" is also excluded from admission at trial. Under Tennessee Rule of Evidence 801, "'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." However, there are exceptions to the hearsay rule, one of which is an excited utterance. *See* Tenn. R. Evid. 803(2).

Pursuant to Rule of Evidence 803(2), the hearsay rule does not exclude "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Tenn. R. Evid. 803(2). "Underlying the excited utterance exception is the theory that 'circumstances may produce a condition of excitement which temporarily stills the capacity of reflection and produces utterances free of conscious fabrication.'" *State v. Franklin*, 308 S.W.3d 799, 823 (Tenn. 2010) (quoting *State v. Land*, 34 S.W.3d 516, 528 (Tenn. Crim. App. 2000)). Three requirements must be met for a statement to qualify as an excited utterance:

> The first requirement is a startling event or condition that suspends the normal, reflective thought processes of the declarant. Second, the

6

statement must relate to the startling event or condition. This broad requirement offers considerable leeway such that the statement may describe all or part of the event or condition, or deal with the effect or impact of that event or condition. The third and final requirement dictates that the declarant make the statement while under the stress or excitement from the event or condition. This requirement considers a variety of factors, including the interval of time between the startling event and the statement.

Id. (footnotes, citations, and internal quotation marks omitted). The excited utterance exception also has a competency requirement where "the declarant must have had an opportunity to observe the facts contained in the extrajudicial statement." *Land*, 34 S.W.3d at 529. The "'ultimate test'" of whether a statement is admissible within the excited utterance exception is "'spontaneity and logical relation to the main event and where an act or declaration springs out of the transaction while the parties are still laboring under the excitement or strain of the circumstances and at a time so near it as to preclude the idea of deliberation and fabrication.'" *Franklin*, 308 S.W.3d at 823 (quoting *State v. Smith*, 857 S.W.2d 1, 9 (Tenn. 1993)).

We conclude that Officer Janish's testimony concerning the statements made to him by the assault victim was admissible as "excited utterances." Officer Janish testified that he arrived at the victim's home "right after" the alleged assault and that, when he arrived, he found the victim "extremely upset . . . crying . . . and a little fearful." Officer Janish also testified that the victim immediately reported that the Defendant had headbutted her and that he observed an injury to the victim's head consistent with the victim's allegations. In light of the victim's appearance, her physical condition, and the short interval between the assault and her statements, we find that the statements were admissible as "excited utterances." The Defendant is not entitled to relief on this issue.

### III. Conclusion

In accordance with the foregoing reasoning and authorities, we affirm the trial court's judgment.

_____
ROBERT W. WEDEMEYER, JUDGE

7